UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN BARNES,

                       Plaintiff,

     -against-

CARSON BLOCK and MUDDY WATERS,
LLC,

                   Defendants.

22 Civ. 7236 (VSB)(RWL)


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**


Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ..................................................................................ii-vi

A SHAKEDOWN ......................................................................................................1

ALLEGATIONS IN THE COMPLAINT ...................................................................4

PROCEDURAL HISTORY.........................................................................................8

ARGUMENT ..............................................................................................................9

    I.     PLAINTIFF'S UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST
          CLAIMS ARE NOT RIPE..................................................................................9

    II.    PLAINTIFF'S FIDUCIARY DUTY AND CONSTRUCTIVE TRUST
          CLAIMS FAIL BECAUSE DEFENDANTS DID NOT OWE PLAINTIFF
          A FIDUCIARY DUTY......................................................................................11

          A.     No Partnership Existed Among the Parties.............................................12

          B.     Plaintiff's Claimed "Oral Partnership Agreement" Is Incompatible
                with His Unjust Enrichment Claim.........................................................14

    III.   THE COURT LACKS PERSONAL JURISDICTION OVER
          DEFENDANTS ................................................................................................15

          A.     The Court Lacks General Jurisdiction Over Defendants ...........................15

          B.     The Court Lacks Specific Jurisdiction Over Defendants...........................16

          C.     Exercising Personal Jurisdiction Is Inconsistent with the Due Process
                Clause.....................................................................................................17

    IV.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED ON FORUM NON
          CONVENIENS GROUNDS................................................................................20

    V.    PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM IS UNTIMELY .....21

    VI.   PLAINTIFF HAS NOT SHOWN WHY IMPOSITION OF A
          CONSTRUCTIVE TRUST IS APPROPRIATE ...................................................22

    VII.  PLAINTIFF'S CLAIMS ARE COMPULSORY COUNTERCLAIMS IN MR.
          BLOCK'S DEFAMATION SUIT .......................................................................23

CONCLUSION.........................................................................................................25

i

TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Accord Pons v. People's Rep. of China*,
    666 F. Supp. 2d 406 (S.D.N.Y. 2009) ............................................................ 23

*Adwar Casting Co., Ltd. v. Star Gems Inc.*,
    342 F. Supp. 3d 297 (E.D.N.Y. 2018) ........................................................... 15

*Albright v. Gates*,
    362 F. 2d 928 (9th Cir. 1966) ........................................................................ 24

*Art Tech. Grp., Inc. v. Puritan's Pride, Inc.*,
    716 F. Supp. 2d 93 (D. Mass. 2010) ............................................................. 25

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*,
    480 U.S. 102 (1987) ....................................................................................... 18

*Axel Johnson, Inc. v. Arthur Andersen & Co.*,
    830 F. Supp. 204 (S.D.N.Y. 1993) ................................................................. 9

*Baker v. Gold Seal Liquors, Inc.*,
    417 U.S. 467 (1974) ....................................................................................... 24

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
    171 F.3d 779 (2d Cir. 1999) ..................................................................... 17, 18

*Barrett v. Tema Dev. (1988), Inc.*,
    463 F. Supp. 2d 423 (S.D.N.Y. 2006) ........................................................... 17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................... 2, 11

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007) .......................................................................... 16

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
    448 F.3d 573 (2d Cir. 2006) .......................................................................... 14

Blank v. TriPoint Glob. Equities, LLC,
    338 F. Supp. 3d 194 (S.D.N.Y. 2018) ........................................................... 22

*Chevron Corp. v. Donziger*,
    871 F. Supp. 2d 229 (S.D.N.Y. 2012) ........................................................... 10

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) .......................................................................... 17

*Ciccone v. Hersh*,
    530 F. Supp. 2d 574 (S.D.N.Y. 2008)...........................................................................22

*Counihan v. Allstate Ins. Co.*,
    194 F.3d 357 (2d Cir. 1999)...........................................................................................10

*Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*,
    233 F.3d 697 (2d Cir. 2000)...........................................................................................24

*Dennis v. JPMorgan Chase & Co.*,
    343 F. Supp. 3d 122 (S.D.N.Y. 2018).............................................................................16

*Dixon v. von Blanckensee*,
    994 F.3d 95 (2d Cir. 2021)...............................................................................................4

*Doe v. Securities & Exchange Comm'n*,
    No. 22-1652 (3d Cir.)........................................................................................................8

*Ely v. Perthuis*,
    No. 12-cv-1078, 2013 WL 411348. (S.D.N.Y. Jan. 29, 2013) ...................................13, 14

*Fried v. Kelly*,
    No. 06-cv-1528, 2007 WL 1821697 (S.D.N.Y. Jun. 26, 2007)........................................12

Gary Friedrich Ent., LLC v. Marvel Ent., Inc.,
    713 F. Supp. 2d 215 (S.D.N.Y. 2010).............................................................................22

*Golden Pacific Bancorp v. Fed. Deposit Ins. Corp.*,
    273 F.3d 509 (2d Cir. 2001)...........................................................................................10

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
    564 U.S. 915 (2011)........................................................................................................15

*Hammond v. Smith*,
    151 A.D. 3d 1896 (4th Dep't 2017)............................................................................13, 14

*Hart v. Rick's Cabaret Int'l, Inc.*,
    967 F. Supp. 2d 901 (S.D.N.Y. 2013).............................................................................14

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
    12 N.Y.3d 132 (2009) .....................................................................................................21

*In re First Cent. Fin. Corp.*,
    377 F.3d 209 (2d Cir. 2004).......................................................................................10, 11

*In re Libor-Based Fin. Instruments Antitrust Lit.*,
    No. 13-cv-262, 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015)...........................................23

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945)................................................................................................. 18

*Iragorri v. United Techs. Corp.*,
    274 F. 3d 65 (2d Cir. 2001)..................................................................................... 21

*Isaacs v. Bowen*,
    865 F.2d 468 (2d Cir. 1989)..................................................................................... 9

*Islip U-Slip LLC v. Gander Mountain Co.*,
    2 F. Supp. 3d 296 (N.D.N.Y. 2014)....................................................................... 23

*Johnson v. JPMorgan Chase Bank, N.A.*,
    488 F. Supp. 3d 144 (S.D.N.Y. 2020)...................................................................... 6

*Johnson v. Nextel Commc'ns, Inc.*,
    660 F. 3d 131 (2d Cir. 2011)................................................................................... 11

*Jones v. Ford Motor Credit Co.*,
    358 F.3d 205 (2d Cir. 2004)................................................................................... 24

*JPMorgan Chase Bank, N.A. v. Maurer*,
    No. 13-cv-3302, 2015 WL 539494 (S.D.N.Y. Feb. 10, 2015) ............................ 11

*Katz v. Donna Karan Co. Store, L.L.C.*,
    872 F.3d 114 (2d Cir. 2017)..................................................................................... 4

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000)..................................................................................... 9

*Kermanshah v. Kermanshah*,
    580 F. Supp. 2d 247 (S.D.N.Y. 2008).................................................................... 10

*Kernan v. Kurz-Hastings, Inc.*,
    997 F. Supp. 367 (W.D.N.Y. 1998)........................................................................ 19

*Kevorkian v. Harrington*,
    158 Misc. 2d 464 (Sup. Ct. N.Y. Cnty. 1993) ..................................................... 25

Kidz Cloz, Inc. v. Officially For Kids, Inc.,
    320 F. Supp. 2d 164 (S.D.N.Y. 2004).................................................................... 12

*Lia v. Saporito*,
    541 F. App'x 71 (2d Cir. 2013) .............................................................................. 21

*Malmsteen v. Berdon, LLP*,
    477 F. Supp. 2d 655 (S.D.N.Y. 2007).................................................................... 21

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F. 3d 560 (2d Cir. 1996)............................................................................... 19

*Mujo v. Jani-Kin Int'l, Inc.*,
    13 F.4th 204 (2d Cir. 2021) ............................................................................ 11

*Murray v. British Broad. Corp.*,
    81 F.3d 287 (2d Cir. 1996)............................................................................... 20

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
    416 F.3d 146 (2d Cir. 2005)............................................................................. 20

*North Am. Knitting Mills, Inc. v. Int'l Women's Apparel, Inc.*,
    No. 99-cv-4643, 2000 WL 1290608 (S.D.N.Y. Sept. 12, 2000) ................................ 12, 14

*Painter v. Harvey*,
    673 F. Supp. 777 (W.D. Va. 1987) ................................................................... 24

*Pena v. Guzman*,
    2004 WL 253331 (S.D.N.Y. Feb 11, 2004)....................................................... 23

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010)............................................................................... 15

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)........................................................................................ 20

*Pricaspian Dev. Corp. (Texas) v. Royal Dutch Shell, PLC*,
    382 F. App'x 100 (2d Cir. 2010) ..................................................................... 10

*San Ysidro Corp. v. Robinow*,
    768 N.Y.S.2d 191 (1st Dep't 2003) ................................................................. 25

*SAS Grp., Inc. v. Worldwide Inventions, Inc.*,
    245 F. Supp. 2d 543 (S.D.N.Y. 2003)............................................................. 16

SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.,
    548 F. App'x 741 (2d Cir. 2014) ....................................................................... 9

*Simmonds v. I.N.S.*,
    326 F.3d 351 (2d Cir. 2003).............................................................................. 9

*Thackurdeen v. Duke Univ.*,
    130 F. Supp. 3d 792 (S.D.N.Y. 2015).............................................................. 15

*Tymoshenko v. Firtash*,
    No. 11-cv-2794, 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013)........................ 20

v

*United Enterprises, Ltd. v. Hill*,
    185 A.D.2d 206 (1st Dep't 1992) ................................................................................. 25

*Usov v. Lazar*,
    No. 13-cv-818, 2014 WL 4354691 (S.D.N.Y. Sept. 2, 2014) .......................................... 13

World Wrestling Entm't, Inc. v. Jakks Pac., Inc.,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007) ............................................................................. 11

*Xedit Corp. v. Harvel Ind. Corp.*,
    456 F. Supp. 725 (S.D.N.Y. 1978) ................................................................................. 17

**Rules**

CPLR 301 ............................................................................................................................ 15

CPLR 302 ....................................................................................................................... 16, 17

Fed. R. Civ. P. 11 ............................................................................................................... 10

**Statutes**

15 U.S.C. § 78u-6(f) ............................................................................................................ 8

**A SHAKEDOWN**

This action is a shakedown. Plaintiff Kevin Barnes apparently believes he is entitled to a whistleblower award from the United States Securities and Exchange Commission ("SEC") for work he did years ago for Defendant Muddy Waters, LLC ("Muddy Waters"). After careful review at the administrative level, the SEC issued a written decision determining otherwise. Barnes is currently appealing that determination. Unsatisfied with both the administrative law process and his appellate rights, Barnes has turned his ire to Defendant Carson Block, seeking to wrest from him a portion of the whistleblower award to which the SEC concluded Mr. Block is entitled. Barnes began by privately threatening Mr. Block. When that did not work, he took his false grievances to the press. Now, Barnes has filed this lawsuit—a last-ditch effort to win the payday the SEC has denied him. Barnes' abuse of the litigation process must be stopped.

The case stems from Muddy Waters' investigation into a Chinese company's fraudulent representations to United States investors. Mr. Block, as the sole member and manager of Muddy Waters, hired Barnes as a third-party consultant to join an existing investigation team and compensated him for his work. Muddy Waters then published six reports on the findings of its investigation and submitted compelling information of fraud to the SEC based on these reports. The SEC launched an investigation of the Chinese company, which led to an approximately $55 million settlement in favor of the Government.

Following the settlement, Mr. Block, as the sole member and manager of Muddy Waters, applied to the SEC for a whistleblower award based on the investigation he led, the reports Muddy Waters published, and the information he provided to the SEC through discussions over phone and email. Barnes submitted his own, competing application, claiming an entitlement based on the investigative work Mr. Block had hired him to do—even though Barnes had never submitted *any* information to the SEC. The SEC recognized that Mr. Block's information,

including the Muddy Waters reports and Mr. Block's direct communications with the SEC, had

contributed significantly to its investigation, and it determined Mr. Block is entitled to a $14

million whistleblower award. At the same time, the SEC determined Barnes is entitled to

nothing. But Mr. Block has yet to receive any award—and that is because Barnes is actively

blocking its payment by pursuing a frivolous appeal of the SEC's finding against him in the

United States Court of Appeals for the Third Circuit. That appeal is currently pending.

Fully aware that not a penny has been paid to Mr. Block, Barnes filed this case, asserting

among other things that Mr. Block has been unjustly enriched with an SEC whistleblower award

that Barnes' own conduct is blocking. None of Barnes' claims has any merit, and indeed at least

two of the three are sanctionable. The claims in this case should be dismissed for seven reasons.

*First*, this case rests principally on the assertion that Mr. Block has *received* a

whistleblower award. That assertion is demonstrably false, and Barnes knows it. Barnes' claims

for unjust enrichment and constructive trust must be dismissed as wholly unripe; neither claim

can lie because Mr. Block has not received and is not in possession of anything of value. Barnes'

gambit—preventing the award from being paid while simultaneously claiming Mr. Block

possesses it and has been unjustly enriched by it—is not just hypocrisy; it is sanctionable

conduct.

*Second*, Barnes' claim for breach of fiduciary duty is meritless for the simple reason that

Mr. Block did not owe Barnes a fiduciary duty. Barnes worked for Mr. Block as an independent

contractor and Mr. Block compensated him for his work. No "oral partnership agreement"

existed between the parties that would give rise to any fiduciary duty. Barnes' allegations to the

contrary are conclusory, implausible, and insufficient to sustain his claim under *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, Barnes' breach of fiduciary duty claim

is at odds with his theory of the case. He insists the parties had an "oral partnership agreement" that Mr. Block purportedly breached yet he *does not bring a breach of contract claim*. Instead, Barnes asserts an equitable unjust enrichment claim that can succeed only if there was *no partnership agreement* between the parties, along with a breach of fiduciary duty claim that can succeed only if there *was a partnership agreement* between the parties. None of this makes any sense. Barnes's pleading is not merely "in the alternative;" it is legally incoherent and cannot sustain a claim for breach of fiduciary duty.

*Third*, this Court does not have personal jurisdiction over Defendants—an individual who lives in Texas and a limited liability corporation that was organized under the laws of the State of Nevada and has its principal place of business in Texas. Barnes' decision to bring this case in New York is just a pressure tactic to extort a payment from Mr. Block.

*Fourth*, the case should be dismissed on forum non conveniens grounds because it has no connection to New York.

*Fifth*, the breach of fiduciary duty claim is untimely because it arises from events that took place more than six years before this case was filed.

*Sixth*, no constructive trust is available because Barnes is seeking monetary damages.

*And seventh*, to the extent Barnes' meritless claims should be heard at all, they should be litigated in Texas, where Mr. Block has a pending lawsuit against Barnes arising from the false statements Barnes has made in the media, including falsely claiming that Mr. Block received an SEC whistleblower award and failed to honor a non-existent agreement to share it, to try to obtain a portion of any award Mr. Block receives.

Barnes' Complaint is an act of desperation and greed. He never had a partnership with Mr. Block and he is not entitled to any SEC whistleblower award. He simply hopes that if he

continues to hurl invective toward Mr. Block, Mr. Block will pay him some money to go away. But that is not going to happen. The Court should view this case for what it really is: three unsustainable legal claims that were designed to induce a settlement, not be litigated. The case should be dismissed in its entirety.

## ALLEGATIONS IN THE COMPLAINT[1]

**Carson Block & Muddy Waters – No Connection to New York**

Carson Block is the owner and sole member of Muddy Waters. ¶ 26.[2] Muddy Waters is an independent organization that provides information to the investing public regarding publicly traded companies, especially companies that have been engaged in wrongdoing or have serious inaccuracies in their financial statements. ¶ 27. Mr. Block resides in Austin, Texas. ¶ 14. Muddy Waters is organized under the laws of Nevada; its principal place of business is Austin, Texas. ¶ 15. Barnes resides in Pennsylvania. ¶ 13.

**Muddy Waters Investigates Focus Media**

In 2011, Mr. Block began to suspect that a Chinese company, Focus Media, and its chief executive, Jason Jiang, had mispresented its business to United States investors through its securities filings. ¶ 44. Mr. Block decided to launch an investigation into Focus Media and publish the findings of that investigation through Muddy Waters. ¶¶ 44, 48.

On September 14, 2011, Mr. Block and Barnes met in New York to discuss the Focus Media investigation. ¶ 43. The meeting lasted "over an hour." *Id.* During the meeting, Barnes agreed to contribute to the Focus Media investigation by conducting an "in-depth analysis of

---

[1] Defendants vigorously dispute the allegations in the Complaint. They are recited here only because the Court must accept a complaint's factual allegations as true on a motion to dismiss. *See Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114, 118 (2d Cir. 2017). The Court need not, however, accept "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

[2] All citations to "¶ __" refer to paragraphs in the Complaint.

Focus Media and Jiang." ¶ 47. The Complaint refers to this agreement as an "oral partnership agreement." ¶ 45. According to the Complaint, the only terms of this alleged "oral partnership agreement" were: (1) "Barnes would provide research and financial analysis concerning the Focus Media opportunity and Mr. Block, through Muddy Waters, would publicize the findings," (2) each of Mr. Block and Barnes would be permitted to trade (short) the stock at his own risk, and (3) "if the report generated revenue, the parties would share in those proceeds." ¶ 46.

The Complaint does not allege any agreement between Mr. Block and Barnes concerning what constituted "revenue" generated by the report or *how* any proceeds would be shared. The Complaint is also silent as to whether Muddy Waters agreed to compensate Barnes for his work on the Focus Media investigation (it did) and who conceived of, directed, and funded the Focus Media investigation (Mr. Block and Muddy Waters). Aside from a single hour-plus meeting in New York in September 2011, the parties had no additional contact in New York concerning Focus Media.

The Focus Media investigation was conducted primarily in Bangkok, Thailand. ¶¶ 54-55. Muddy Waters' on-site team consisted of Mr. Block, individuals who had Chinese language capabilities, and Barnes. *Id.* The team spent one month in Bangkok, from October 10, 2011 through November 9, 2011. ¶¶ 55, 60. Mr. Block, Barnes, and another Muddy Waters team member then flew to California finalize the report. ¶ 60.

**Muddy Waters Publishes the FMCN Report**

On November 21, 2011, Muddy Waters published the final report, entitled "FMCN: The Olympus of China" (the "FMCN Report"). ¶ 61. The report was published from Mr. Block's home in California. ¶ 62. While Barnes claims to have "written" the FMCN Report, *id.*, the FMCN Report itself lists Mr. Block as the "Director of Research" on the title page and states that

Muddy Waters had a team that contributed to the preparation of the report.[3] *See* Ex. A.[4] Barnes' name does not appear once in the FMCN Report. Within hours of the release of the FMCN Report, shares of Focus Media plunged as much as 66% in intraday trading. ¶ 69.

Mr. Block and Muddy Waters continued investigating Focus Media. Following the publication of the initial FMCN Report, Muddy Waters published five additional reports on Focus Media between 2011 and 2013.[5] Barnes does not allege to have been involved in any of those subsequent reports. Instead, in or around September 2012, Barnes took a full-time position with an SEC-registered investment advisor. ¶ 77.

**The SEC Investigates and Punishes Focus Media Based on Muddy Waters' Reports**

In December 2011, the SEC opened a "Matter Under Inquiry" concerning Focus Media and Jiang. ¶ 71. Muddy Waters, through Mr. Block, discussed the FMCN Report findings with the SEC and provided the SEC with the FMCN Report and the source materials on which it was based. ¶¶ 72-73.

On September 30, 2015, the SEC released a Notice of Covered Action announcing that it had successfully entered into a settlement with Focus Media and Jiang in the amount of approximately $55.6 million. ¶ 79. Simultaneous with the posting of the Notice of Covered Action, the SEC announced it would accept applications from those people who believed they provided material information to the SEC and could support a whistleblower award. ¶ 81.

---

[3]      "In deciding a motion to dismiss, the Court can consider documents incorporated by reference in the complaint." *Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 161 n.29 (S.D.N.Y. 2020). The Complaint repeatedly refers to the FMCN Report, and thus the Court is permitted to consider its contents on this motion to dismiss.

[4]      Exhibits cited herein are attached to the Declaration of Samuel Shapiro, filed herewith.

[5]      Muddy Waters Research, "Focus Media Holding Ltd.," (last visited Oct. 18, 2022), https://www.muddywatersresearch.com/company/fmcn/.

**Mr. Block and Barnes Submit Competing Whistleblower Award Applications**

Following the SEC's announcement, Barnes reached out to Mr. Block to inquire about submitting a whistleblower award application to the SEC based on the FMCN Report. ¶ 86. Mr. Block responded, "I'll look at whether it's potentially eligible." ¶ 87. Barnes continued to follow-up with Mr. Block, but Mr. Block did not respond to Barnes' outreach. ¶¶ 88-89. On January 19, 2016, Mr. Block responded to Barnes, saying that Mr. Block already had counsel handle the whistleblower award application. ¶ 91. After Mr. Block's failure to respond to Barnes' repeated outreach concerning the whistleblower application, Mr. Block's January 19, 2016 email caused Barnes to believe that "Mr. Block might no longer [be] adequately representing Barnes' interest." ¶ 92.

In all of Barnes' communications with Mr. Block concerning the whistleblower award application, Barnes does not allege that he (i) demanded a share of any potential whistleblower award Mr. Block may receive, (ii) raised the purported "oral partnership agreement," or (iii) sought to enforce the purported "oral partnership agreement." Instead, on January 19, 2016, Barnes filed his own whistleblower award application without informing Mr. Block, *id.*, acknowledging that he was aware as of January 2016 that neither Mr. Block nor Muddy Waters was seeking a whistleblower award on Barnes' behalf. After January 19, 2016, Mr. Block and Barnes did not have any further communications concerning Focus Media, the FMCN Report, or any potential SEC whistleblower award. ¶ 94.

**The SEC Determines Mr. Block, not Barnes, Qualifies for a Whistleblower Award and Barnes Appeals the Determination**

On March 11, 2022, the SEC issued a Final Order determining that Mr. Block qualified for a whistleblower award and Barnes did not (the "Final Order"). ¶¶ 103-04. On April 8, 2022, Barnes appealed the Final Order to the United States Court of Appeals for the Third Circuit,

asking that court to reverse the Final Order. ¶ 118; *see* 15 U.S.C. § 78u-6(f) (describing right to appeal whistleblower awards); *Doe v. Securities & Exchange Comm'n*, No. 22-1652 (3d Cir.). In that appeal, Barnes does not claim he was Mr. Block's partner or that he and Mr. Block purportedly agreed to share any award. Rather, Barnes claims only that he, not Mr. Block, provided important information to the SEC regarding Focus Media. Barnes' petition is pending in the Third Circuit. Because of Barnes' appeal, neither Mr. Block nor Muddy Waters has received any money from the SEC. The Complaint does not allege otherwise.

## PROCEDURAL HISTORY

On July 25, 2022, Plaintiff filed a Summons with Notice in the Supreme Court of the State of New York, New York County. *See* Dkt. 1-1. The two-page Summons with Notice stated that "the nature of this action is breach of partnership, unjust enrichment, and constructive trust" against Mr. Block and Muddy Waters arising from the SEC whistleblower award and the FMCN Report. *Id.* The Summons with Notice did not assert any claims or contain a statement of facts that would support any claims. *Id.* On August 24, 2022, before Plaintiff had filed or served a complaint, Defendants filed a Notice of Removal in this Court. Dkt. 1. On August 25, 2022, Mr. Block filed a complaint against Barnes in the United States District Court for the Western District of Texas, asserting defamation claims against Barnes arising from Barnes' false statements to the media in which he claimed Mr. Block received an SEC whistleblower award and violated a purported agreement to share that award. *See Block v. Barnes*, No. 22-cv-00869 (W.D. Tex.); Ex. B. Mr. Block served Barnes with the Texas complaint on September 6, 2022. On September 26, 2022, one month after the Texas action was filed, Barnes filed his Complaint in this case.

For the reasons set forth below, Barnes' Complaint should be dismissed.

**ARGUMENT**

Barnes' claims fail because (i) the unjust enrichment and constructive trust claims are not ripe; (ii) Defendants did not owe Barnes a fiduciary duty; (iii) the Court lacks personal jurisdiction over Defendants; (iv) the claims should be dismissed on forum non conveniens grounds; (v) the breach of fiduciary duty claim is untimely; (vi) no basis exists to impose a constructive trust; and (vii) all of the claims are barred by the compulsory counterclaim rule.

## I.  PLAINTIFF'S UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST CLAIMS ARE NOT RIPE

The unjust enrichment and constructive trust claims must be dismissed because Barnes does not allege that Defendants have actually received any money to which they are not entitled.

"A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *SC Note Acquisitions, LLC* v. *Wells Fargo Bank, N.A.*, 548 F. App'x 741, 742 (2d Cir. 2014) (cleaned up). An unripe claim must be dismissed. *See Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003). To determine whether a case is ripe, courts evaluate whether "the issues are appropriate or fit for judicial determination." *Isaacs v. Bowen*, 865 F.2d 468, 478 (2d Cir. 1989). "This fitness inquiry is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *Id.*

Neither an unjust enrichment nor a constructive trust claim is ripe until the defendant actually receives something of value. The essence of an unjust enrichment claim is that "one party has *received* money or a benefit at the expense of another." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (cleaned up) (emphasis added); *see also Axel Johnson, Inc. v. Arthur Andersen & Co.*, 830 F. Supp. 204, 212 (S.D.N.Y. 1993) ("To be actionable, a claim for unjust enrichment requires that the defendant already has been enriched."). The claim does not even accrue until a defendant *receives* property to which he is not entitled. *See Golden Pacific*

*Bancorp v. Fed. Deposit Ins. Corp.*, 273 F. 3d 509, 519 (2d Cir. 2001); *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 262 (S.D.N.Y. 2008).

Similarly, to justify the imposition of a constructive trust, a plaintiff must show the defendant has actually received something to which he is not entitled. *See Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361-62 (2d Cir. 1999); *see also In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004) (constructive trust remedy requires the plaintiff to show that there has been "a transfer of the subject *res* [property]").

Here, the SEC has not paid Defendants anything. Barnes knows this.[6] He knows it because he has blocked any payment from being made by appealing the Final Order and asking for it to be reversed. If he prevails on his appeal, Defendants may receive nothing. Defendants' receipt of any money from the SEC is thus entirely contingent on the outcome in the Third Circuit appeal that Barnes himself is pursuing.

The Final Order is not an unrealized benefit that Defendants are guaranteed to receive at a later date. *See Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 259 (S.D.N.Y. 2012) (finding unjust enrichment claim based on judgment entered in Ecuadorian court to be "premature at best" because the defendants "have not recovered on the [j]udgment to date"). An unjust enrichment claim may accrue before a defendant actually receives a benefit only where a defendant has already received a *right* to the benefit at issue. *See Pricaspian Dev. Corp. (Texas) v. Royal Dutch Shell, PLC,* 382 F. App'x 100, 103-04 (2d Cir. 2010) (unjust enrichment claim accrued when defendant obtained oil rights to the exclusion of plaintiff, before those rights had yielded a profit); *JPMorgan Chase Bank, N.A. v. Maurer*, No. 13-cv-3302, 2015 WL 539494, at

---

[6] On October 3, 2022, Defendants sent a letter to Plaintiff's counsel, pursuant to Fed. R. Civ. P. 11, asking Plaintiff to withdraw his claims because they are based on a payment that has not been made and therefore are not ripe. Plaintiff refused to withdraw his claims.

*6 (S.D.N.Y. Feb. 10, 2015) (unjust enrichment claim accrued when defendants obtained

security interests in IRA to the exclusion of plaintiff). The "ultimate question" in considering

unjust enrichment claims is whether the "party liable, to the detriment of someone else, obtained

something of value to which the party liable was not entitled." *Mujo v. Jani-Kin Int'l, Inc.*, 13

F.4th 204, 213 (2d Cir. 2021) (cleaned up).

  While Barnes' Third Circuit appeal is pending, the SEC's Final Order has no value.

Defendants have no right to any payment from the SEC unless and until the Third Circuit affirms

the Final Order and Barnes exhausts any other appellate rights he may have. The unjust

enrichment and constructive claims are therefore not ripe and must be dismissed.

## II. PLAINTIFF'S FIDUCIARY DUTY AND CONSTRUCTIVE TRUST CLAIMS FAIL BECAUSE DEFENDANTS DID NOT OWE PLAINTIFF A FIDUCIARY DUTY

  Barnes' breach of fiduciary duty and constructive trust claims fail because they rest upon

an asserted "oral partnership" that, even according to the Complaint's allegations, lacks the key

elements of a partnership under New York law, including a clear agreement to share profits and

losses, and joint management and control.

  Both a breach of fiduciary duty and a constructive trust claim require a fiduciary duty.

*See Johnson v. Nextel Commc'ns, Inc.*, 660 F. 3d 131, 138 (2d Cir. 2011) (breach of fiduciary

duty); *In re First Cent. Fin. Corp.*, 377 F. 3d. at 212 (constructive trust). "To survive a motion to

dismiss . . . the plaintiff must set forth specific facts constituting the alleged relationship with

sufficient particularity to enable the Court to determine whether, if true, such facts could give

rise to a fiduciary relationship." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d

486, 504 (S.D.N.Y. 2007) (cleaned up). At the motion to dismiss stage, a plaintiff's factual

allegations must be more than "a formulaic recitation of the elements of a cause of action."

*Twombly*, 550 U.S. at 555.

Barnes fails to adequately allege a fiduciary relationship here.

**A.**      **No Partnership Existed Among the Parties**

Barnes' bald, unsupported characterization of his relationship with Defendants as a

"partnership" is insufficient to create a fiduciary duty. The party pleading the existence of the

partnership bears the burden of proving its existence. *North Am. Knitting Mills, Inc. v. Int'l*

*Women's Apparel, Inc.*, No. 99-cv-4643, 2000 WL 1290608, at *1 (S.D.N.Y. Sept. 12, 2000).

Plaintiff has not done so here.[7]

Plaintiff does not (and could not) allege there was a written partnership agreement

between the parties. He is therefore forced to rely on an alleged "oral partnership agreement."

¶ 45. Where there is no written partnership agreement, courts consider four factors to determine

whether a partnership exists: "(1) the parties' sharing of profits and losses; (2) the parties' joint

control and management of the business; (3) the contribution by each party of property, financial

resources, effort, skill, or knowledge to the business; and (4) the parties' intention to be

partners." *Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004).

"The absence of a single element is fatal to the establishment of a partnership." *Fried v. Kelly*,

No. 06-cv-1528, 2007 WL 1821697, at *5 (S.D.N.Y. Jun. 26, 2007).

All four of these factors weigh against the existence of a partnership. First, Barnes does

not allege (i) he ever shared in any profits stemming from the publication of the FMCN Report,

or (ii) there was any agreement or *discussion* concerning sharing losses. An agreement to share

profits and losses is "an indispensable essential of a contract of partnership or joint venture."

*Kidz Cloz*, 320 F. Supp. 2d at 164 (cleaned up); *see also Usov v. Lazar*, No. 13-cv-818, 2014 WL

---

[7] Plaintiff never says who the parties were to the alleged "oral partnership agreement." To the extent he claims the purported agreement was made during a meeting with Mr. Block, there is nothing in the Complaint to suggest that Muddy Waters was a party to any alleged "oral partnership agreement."

4354691, at *10 (S.D.N.Y. Sept. 2, 2014) (finding no partnership where plaintiff failed to plead the most crucial element: the sharing of profits and losses). Barnes does not allege *how* the parties purportedly agreed to share any profits or losses. *See* ¶ 46. Nor does he allege the parties even *discussed* losses as part of the alleged agreement, glossing over the obvious reality that Defendants funded the Focus Media investigation and the FMCN Report. *See Ely v. Perthuis*, No. 12-cv-1078, 2013 WL 411348, at *4 n.5. (S.D.N.Y. Jan. 29, 2013) (finding no partnership where plaintiffs used conclusory language to state that the parties agreed to be partners without explaining whether or not they would share losses and only referencing profits). The first factor thus is not satisfied.

Second, Barnes does not allege he had any control over the management of the Focus Media investigation or the resulting FMCN Report. "Joint control and management" can include "shared supervision" of operations and "shared responsibility for handling financial affairs." *Hammond v. Smith*, 151 A.D. 3d 1896, 1898-99 (4th Dep't 2017). Barnes does not allege he exercised such joint control or management here. He alleges the investigation team consisted of Mr. Block, Mr. Block's wife, three Chinese nationals Muddy Waters retained, and Barnes, ¶ 56, but he does not claim to have had any management responsibility or control over any of these team members. He also acknowledges that the FMCN Report was published and publicized by Muddy Waters and that Defendants interfaced with the SEC regarding the report. *See* ¶¶ 48, 73, 75. Barnes does not allege the kind of "joint management" sufficient to create a partnership.

Third, regardless of whether Barnes sufficiently alleges he contributed to the FMCN Report, the Complaint makes clear that Barnes and Defendants were not on equal footing when it came to the Focus Media investigation or the FMCN Report. In assessing the parties' contributions, a plaintiff's contribution of skill and knowledge is not dispositive; courts must

consider the parties' relationship "as a whole." *Hammond*, 151 A.D. 3d at 1900 (finding no fiduciary duty where plaintiff contributed skill and knowledge without more). Barnes alleges Mr. Block conceived of the idea to investigate Focus Media, ¶ 42, and, through silence, concedes Defendants funded the investigation and report. The FMCN Report itself was published by Muddy Waters, lists Mr. Block as the Director of Research, and does not mention Barnes at all. *See* Ex. A. Taken as a whole, the parties' relationship does not evidence a partnership.

Fourth, while Barnes claims the parties used the term "partnership" to describe their relationship, there is no indication that Defendants intended to give an ordinary term legal meaning, especially given the sheer vagueness of their supposed agreement. Simply "calling an organization a partnership does not make it one." *North Am. Knitting Mills*, 2000 WL 1290608, at *2 (cleaned up). Barnes does not allege a single specific instance where Defendants purportedly used the term "partnership" or referred to Barnes as a "partner." Conclusory assertions that the parties referred to their arrangement as a "partnership" are insufficient to create a partnership. *See Ely*, 2013 WL 411348, at *6 (finding no partnership where Plaintiff simply claimed the parties repeatedly asserted they were partners).

### B.    Plaintiff's Claimed "Oral Partnership Agreement" Is Incompatible with His Unjust Enrichment Claim

By asserting an unjust enrichment claim, Barnes concedes there was no enforceable partnership agreement between the parties. Glaringly, Barnes does not assert a breach of contract claim arising from the alleged oral partnership agreement he asserts. Instead, he asserts an unjust enrichment claim, which "is available only in the absence of an enforceable agreement." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 934 (S.D.N.Y. 2013); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (an unjust enrichment claim is precluded "whenever there is a valid and enforceable contract

governing a particular subject matter, whether that contract is written, oral, or implied-in-fact"). By asserting only an unjust enrichment claim, Plaintiff acknowledges there is no partnership agreement between the parties.

No relationship between the parties, legal or otherwise, created the fiduciary duty needed to sustain Plaintiff's breach of fiduciary duty and constructive trust claims. Those claims therefore should be dismissed.

## III.   THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

This case must also be dismissed because Defendants lack sufficient contacts with New York to justify the Court's exercise of personal jurisdiction.

"In a diversity case, a federal district court exercises personal jurisdiction over a party in accordance with the law of the forum state, subject to the requirements of due process under the United States Constitution." *Adwar Casting Co., Ltd. v. Star Gems Inc.*, 342 F. Supp. 3d 297, 300 (E.D.N.Y. 2018). The plaintiff bears the burden of establishing personal jurisdiction. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010).

### A.   The Court Lacks General Jurisdiction Over Defendants

There is no general jurisdiction because Defendants are not "at home" in New York. CPLR 301 governs general jurisdiction in New York. "Section 301 preserves the common law notion that a court may exercise general jurisdiction over a nondomiciliary defendant if the defendant is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798–99 (S.D.N.Y. 2015) (cleaned up). General jurisdiction is appropriate where the defendant is regarded "at home." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). For individuals, this ordinarily refers to a person's domicile. For corporations, general

15

jurisdiction is appropriate where the corporation is incorporated or where it has its principal place of business. *Id.* at 924.

General jurisdiction is clearly inapplicable here. Mr. Block is domiciled in Texas, ¶ 14, and Muddy Waters is a limited liability company incorporated in Nevada with a principal place of business in Texas, ¶ 15. Nothing in the Complaint establishes that either Defendant is "at home" in New York or that either Defendant has "continuous and systematic" contacts with New York. There is no general jurisdiction.

### B.      The Court Lacks Specific Jurisdiction Over Defendants

There is no specific jurisdiction either because Plaintiff does not allege Defendants transact business in New York and this suit does not arise out of Defendants' contacts with New York.

Specific jurisdiction in New York is governed by CPLR 302, which allows for specific jurisdiction over a non-domiciliary who " (1) transacts business within the state or contracts anywhere to supply goods or services in the state." CPLR 302(a)(1). Specific jurisdiction is "a significantly more limited doctrine" than general jurisdiction. *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 202 (S.D.N.Y. 2018). "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 246 (2d Cir. 2007) (cleaned up).

Here, Barnes has not established either element of specific jurisdiction under CPLR 302 (a)(1). First, he has not established that Defendants transact any business in New York. The crux of the personal jurisdiction inquiry is whether Defendants have indicated "a purposeful invocation of New York law." *SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 548 (S.D.N.Y. 2003) (cleaned up). Barnes does not allege such a purposeful invocation

here. Courts consider "the totality of circumstances concerning the party's interactions with, and activities within, the state." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999). A single hour-plus meeting at which no written contract was signed does not constitute transacting business under New York law. *See, e.g.*, *Barrett v. Tema Dev. (1988), Inc.*, 463 F. Supp. 2d 423, 430 (S.D.N.Y. 2006) ("a single meeting in New York will rarely provide the basis for jurisdiction pursuant to § 302 (a)(1)") (cleaned up).

Second, even if the single meeting in New York constituted a transaction of business, Barnes' claims do not arise from that transaction. A suit arises out of a party's activities if the activities in the forum are "substantially proximate to the allegedly unlawful acts." *Xedit Corp. v. Harvel Ind. Corp.*, 456 F. Supp. 725, 729 (S.D.N.Y. 1978). Here, the connection is tenuous at best. Barnes alleges the Focus Media investigation was conducted in Bangkok, Thailand, ¶¶ 55-59, and the FMCN Report was prepared and published in California, ¶¶ 62, 65. Barnes does not allege that either he or Defendants had any conversations with the SEC in New York. Nor does he allege that Defendants breached their alleged "partnership agreement" in New York. Barnes does not even allege Defendants were "enriched" in New York. And Plaintiff has challenged the SEC's Final Order in his home state of Pennsylvania, not New York. In sum, none of the alleged acts about which Plaintiff complains occurred in New York. Specific jurisdiction is thus lacking.

### C.    Exercising Personal Jurisdiction Is Inconsistent with the Due Process Clause

The exercise of personal jurisdiction over Defendants in this case also runs afoul of the Due Process Clause of the United States Constitution. There are two components to the due process analysis: (1) the minimum contacts inquiry, and (2) the reasonableness inquiry. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010). The minimum contacts inquiry asks "whether the defendant has sufficient contacts with the forum state to

justify the court's exercise of personal jurisdiction." *Id.* at 164. The reasonableness inquiry asks "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

First, Defendants do not have sufficient minimum contacts with the state of New York to justify personal jurisdiction. To determine "minimum contacts," courts will consider whether the defendant "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Bank Brussels Lambert*, 305 F.3d at 127(cleaned up). Here, as explained *supra*, there is no allegation that Defendants purposefully availed themselves of doing business in New York or any indication that Defendants could reasonably foresee being haled into court there.

Second, asserting personal jurisdiction over Defendants here would be unreasonable. In considering the reasonableness of personal jurisdiction, the Supreme Court has considered five factors: (1) "the burden on the defendant", (2) "the interests of the forum state"; (3) "the plaintiff's interest in obtaining relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987). Here, it is clear that the assertion of personal jurisdiction would be unreasonable under all five factors.

First, Defendants would face a burden in terms of travel, expense, and time if they were forced to litigate in New York, thousands of miles from their home state of Texas. Moreover,

none of Defendants' records or evidence regarding the litigation are located New York. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F. 3d 560, 573 (2d Cir. 1996).

Second, New York does not have an interest in this case. Neither Plaintiff nor Defendants are New York residents and none of the alleged misconduct giving rise to the claims occurred in New York. Indeed, this case primarily concerns a dispute over an SEC award that the Plaintiff has *already appealed* outside of the state. ¶ 118.

Third, nothing prevents Barnes from asserting his claims in a forum in which Defendants are subject to personal jurisdiction. Barnes is not a resident of New York and he does not allude to any witnesses or other evidence that could conceivably be more available in New York. *See Metro. Life Ins.*, 84 F.3d at 574.

Fourth, litigating this suit in New York would frustrate the interstate judicial system's interest in efficiency. In evaluating this factor, courts consider "where witnesses and evidence are likely to be located." *Id.* Again, Barnes alleges no witnesses or evidence that could be located in New York. Indeed, all evidence is likely to be located outside New York, as most of the acts underlying the action occurred in other locations. Moreover, there are already two out-of-state suits pending in relation to the facts underlying the complaint—Barnes's own appeal of the Final Order in Pennsylvania and Mr. Block's defamation suit against Barnes in Texas. It would frustrate the efficient administration of justice to allow yet another suit in New York, where neither party is domiciled.

Finally, there are no substantive social policies that could be furthered by permitting this case in New York. This is not a case of foreign corporations evading American courts to the detriment of United States residents or a case concerning human rights. *See, e.g.*, *Kernan v. Kurz-Hastings, Inc.*, 997 F. Supp. 367, 378-79 (W.D.N.Y. 1998); *Tymoshenko v. Firtash*, No.

11-cv-2794, 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013). Barnes' personal vendetta against Mr. Block does not implicate the kind of "fundamental substantive social policies" that could be furthered through exercising personal jurisdiction.

Because all five factors weigh in Defendants' favor, exercising personal jurisdiction is unreasonable and violates Defendants' due process rights.

## IV.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED ON FORUM NON CONVENIENS GROUNDS

Plaintiff's claims should also be dismissed on forum non conveniens grounds because litigating this case in New York would be inconvenient for both parties.

The doctrine of forum non conveniens allows the court to dismiss claims where "dismissal would best serve the convenience of the parties and the ends of justice." *Murray v. British Broad. Corp.*, 81 F.3d 287, 290 (2d Cir. 1996) (cleaned up). When reviewing forum non conveniens, the Second Circuit applies a three-step inquiry: (1) determine the degree of deference accorded to the plaintiff's choice of forum; (2) consider whether an alternate forum is adequate to adjudicate the dispute; (3) balance the private and public interests implicated in the choice of forum. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). All three prongs weigh in favor of dismissal.

First, Barnes brought suit in a forum inconvenient for himself and Defendants. This is not a case where Plaintiff has chosen his home state or where the availability of witnesses or evidence is more convenient for either party. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 266 (1981). In fact, here, all witnesses and evidence are likely to be located outside New York, as most of the acts underlying the action occurred in other locations.

Second, an alternate forum such as Texas, is adequate because Defendants are both "amenable to process" in that jurisdiction and "the alternative forum can provide a satisfactory

remedy." *Id.* at 254 n.22. Defendants are domiciled in Texas and all of Barnes' claims could be brought there, where there is already a pending action concerning the subject matter of this case. *See infra* §VII.

Third, New York has no interest in this case. *See Iragorri v. United Techs. Corp.*, 274 F. 3d 65, 74 (2d Cir. 2001) (considering the burden to the alternate forum, connection of jurors to the community, the forum's local interests, and the importance of applying state law in a diversity case). Almost all the allegations underlying the Complaint occurred outside New York, both parties reside outside of New York, and this is not a case that concerns the community or interests of New York. It should therefore be litigated elsewhere.

## V.    PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM IS UNTIMELY

Plaintiff's breach of fiduciary duty claim is also defective because it is untimely.

Courts apply a three-year statute of limitations when a claim for a breach of fiduciary duty seeks a remedy that is purely monetary in nature and apply a six-year statute of limitations where the remedy sought is equitable in nature. *See Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 666-67 (S.D.N.Y. 2007). Courts look beyond the form of the pleading to analyze the reality of the remedy sought to determine the statute of limitations. For example, where a claimant sought monetary damages  or disgorgement for a breach of fiduciary duty claim, the Second Circuit applied a three-year statute of limitations period, explaining, "[t]he calculated use of the term 'disgorgement' instead of equally applicable terms such as repayment, recoupment, refund, or reimbursement, should not be permitted to distort the nature of the claim so as to expand the applicable limitations period from three years to six." *Lia v. Saporito*, 541 F. App'x 71, 75 (2d Cir. 2013) (cleaned up); *see also IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009) (finding a three-year limitations period where the equitable relief sought was incidental to plaintiff's primarily monetary remedy).

21

Barnes' breach of fiduciary duty claim falls outside the statute of limitations, regardless of whether a three-year or six-year statute is applied. A claim for a breach of fiduciary duty accrues at the time of the alleged breach, not when the plaintiff discovers the breach. *See Ciccone v. Hersh*, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008). Here, Barnes alleges that Defendants breached their purported fiduciary duty to him "by failing to credit Barnes for his role in the FMCN Report to the SEC."[8] ¶ 134. According to Barnes' allegations, Barnes knew as of January 19, 2016 that Mr. Block had submitted a whistleblower award application that did not include Barnes and that Mr. Block was allegedly "quietly plotting to usurp the FMCN Report for his sole benefit." ¶ 89; *see also* ¶ 92 (as of January 19, 2016, "it occurred to Mr. Barnes that Mr. Block might no longer adequately representing Mr. Barnes' interest"). Mr. Block never communicated with Barnes again about Focus Media after January 19, 2016. ¶ 94. Plaintiff's Summons with Notice was filed in July 2022, more than six years after he knew Mr. Block was no longer representing his interest. The breach of fiduciary duty claim is therefore untimely.

## VI.   PLAINTIFF HAS NOT SHOWN WHY IMPOSITION OF A CONSTRUCTIVE TRUST IS APPROPRIATE

Barnes cannot assert a constructive trust claim where, as here, there is an adequate remedy at law.

As an initial matter, a constructive trust is not a cause of action; it is a remedy to be imposed in the absence of an adequate remedy at law. *See, e.g.*, *Gary Friedrich Ent., LLC v. Marvel Ent., Inc.*, 713 F. Supp. 2d 215, 222 (S.D.N.Y. 2010); *Blank v. TriPoint Glob. Equities, LLC*, 338 F. Supp. 3d 194, 220 (S.D.N.Y. 2018) (dismissing claim for constructive trust because

---

[8] Plaintiff also alleges Defendants breached their fiduciary duty to Plaintiff by failing to compensate him for his portion of the $14 million whistleblower award. That theory of liability is not ripe because Defendants have not received, and may not receive, any whistleblower award. *See supra* §I.

it is not a basis for a separate cause of action).. For this reason, Plaintiff's constructive trust "claim" should be dismissed outright.

Even if the Court were to find a constructive trust claim exists, a constructive trust "may not be imposed when money damages are adequate." *In re Libor-Based Fin. Instruments Antitrust Lit.*, No. 13-cv-262, 2015 WL 4634541, at *99 (S.D.N.Y. Aug. 4, 2015); *Accord Pons v. People's Rep. of China*, 666 F. Supp. 2d 406, 415 (S.D.N.Y. 2009). At the motion to dismiss stage, a plaintiff "who fails to make any allegations regarding the insufficiency of a remedy at law has not shown that he is entitled to a constructive trust." *Islip U-Slip LLC v. Gander Mountain Co.*, 2 F. Supp. 3d 296, 307-08 (N.D.N.Y. 2014); *see also Pena v. Guzman*, No. 03-cv-5130, 2004 WL 253331, at *2-3 (S.D.N.Y. Feb 11, 2004) (dismissing a constructive trust claim where the claimant sought to recover payment for services performed pursuant to an alleged contract and did not allege sufficient facts to show that the monetary remedy was insufficient.)

Here, Barnes does not allege that the legal remedy he requests—monetary damages—is insufficient to fully compensate for the damage he purportedly suffered. The only harm he alleges arises from the $14 million award that Defendants have not yet received. The monetary damages Barnes seeks are plainly sufficient to remedy his alleged harm. There is therefore no basis for Plaintiff to seek, let alone assert a claim for, a constructive trust.

## VII.   PLAINTIFF'S CLAIMS ARE COMPULSORY COUNTERCLAIMS IN MR. BLOCK'S DEFAMATION SUIT

Barnes's claims should be heard in Texas because they arise out of the same facts that give rise to Mr. Block's case against Barnes in Texas and the Texas complaint was filed before the Complaint in this case.

A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205,

209 (2d Cir. 2004) (quoting Fed. R. Civ. P. 13(a)). The question is whether the "essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F. 3d 697, 699 (2d Cir. 2000) (cleaned up). A compulsory counterclaim that is not brought is barred. *See Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 (1974).

Counterclaims do not have to be premised on the same legal theory to be deemed compulsory. For example, in a slander case concerning oil security selling operations, a counterclaim regarding the price paid for allegedly worthless oil rights was compulsory. *See Albright v. Gates*, 362 F. 2d 928 (9th Cir. 1966); *see also Painter v. Harvey*, 673 F. Supp. 777 (W.D. Va. 1987) (finding that a defendant's counterclaim for libel and slander based on statements made during the arrest were compulsory).

Here, before Barnes filed his Complaint in this case, Mr. Block filed a defamation suit in federal court in Texas. *See* Ex. B; ¶ 117. Like Barnes' claims here, Mr. Block's suit arises from the parties' work on the Focus Media investigation and the FMCN report, and their subsequent interactions with the SEC. *See* Ex. B ¶¶ 10, 15, 16. Mr. Block asserts a defamation claim based on Barnes' false statements to the media about an alleged partnership between the parties and Mr. Block's purported violation of that alleged partnership. To adjudicate that claim, the Texas court will be asked to determine, *inter alia*, whether Barnes' statements were false—*viz.*, whether a partnership between the parties existed and whether the parties had an agreement to split the proceeds from the FMCN Report. These are the precise issues presented in this case. Judicial economy and fairness dictate that these overlapping issues should be decided in a single forum rather than piecemeal.

The Texas case is the appropriate forum to decide these issues. In New York, courts look to the date the complaint was filed, not the date a summons with notice was filed, to determine which suit was filed first-in-time. *See United Enterprises, Ltd. v. Hill*, 185 A.D.2d 206, 206 (1st Dep't 1992) ("Service of a summons with notice is insufficient to create a prior action pending."); *Kevorkian v. Harrington*, 158 Misc. 2d 464, 467 (Sup. Ct. N.Y. Cnty. 1993) ("[S]ervice of a summons with notice is not a 'prior action pending'; service of a complaint is required."). Courts thus routinely hold that a case should not be dismissed in favor of a New York case for which only a summons with notice has been filed. *San Ysidro Corp. v. Robinow*, 1 A.D.3d 185, 186 (1st Dep't 2003) ("the filing of a summons with notice, absent the service of the complaint, does not constitute the commencement of an action" for purposes of deciding which action has been filed first-in-time); *Art Tech. Grp., Inc. v. Puritan's Pride, Inc.*, 716 F. Supp. 2d 93, 100 n.4 (D. Mass. 2010) (noting that, while a New York action "was technically initiated first" by a summons with notice, the Massachusetts action was "first filed" under "well established" law because the Massachusetts complaint was served before the New York complaint).

At the time Mr. Block filed his Texas complaint, no complaint had been filed in this action, only a Summons with Notice. Therefore, the Texas suit should be deemed the first-in-time, and Barnes' claims should be brought as compulsory counterclaims in the Texas case.

## CONCLUSION

For all the foregoing reasons, the Complaint should be dismissed.

Dated: October 18, 2022
      New York, New York

 

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP


      /s/
_____
Andrew G. Celli, Jr.
Samuel Shapiro
Sana Mayat*

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Defendants*

*Ms. Mayat is admitted to practice
law in New York. Her application for
admission to the United States District
Court for the Southern District of New
York is forthcoming.

26