UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KEVIN BARNES,

                    Plaintiff,

          v.                                                    22-CV-07236-LTS-RWL

CARSON BLOCK and MUDDY WATERS,
LLC,

                    Defendants.

---

MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Barnes ("Plaintiff" or "Barnes") brings this action against

Defendants Carson Block and Muddy Waters, LLC ("Defendants"), alleging that Defendants

failed to disclose his role in disclosures that resulted in an award of whistleblower compensation

to Defendant Block and asserting claims for breach of fiduciary duty, unjust enrichment, and

constructive trust.  (Docket entry no. 13 ("Compl.").)  Before the Court is the Defendants'

motion to dismiss the Complaint for lack of ripeness, lack of personal jurisdiction, and failure to

state a claim upon which relief can be granted, pursuant to Rule 12(b) of the Federal Rules of

Civil Procedure, as well as the doctrine of forum non conveniens.  (Docket entry no. 14 (the

"Motion").)  The parties notified the Court in a February 23, 2024 status update that Defendants

have withdrawn their ripeness arguments.  (Docket entry no. 38.)  The Court has subject matter

jurisdiction of this action pursuant to 28 U.S.C. section 1332.

The Court has carefully considered both parties' submissions.  For the following

reasons, Defendants' motion is granted in part and denied in part.

BACKGROUND

Unless otherwise indicated, the following allegations are taken from the

Complaint, all well-pleaded factual allegations of which are presumed true for purposes of this

motion practice.

This case arises out of a dispute over the rightful ownership of a fourteen-million-

dollar whistleblower award that Defendants were granted by the Securities Exchange

Commission ("SEC") following a successful investigation into securities fraud perpetrated by

Focus Media Holding Company, Inc. ("Focus Media").  (Compl. ¶ 1.)  Barnes is a financial

analyst and resident[1] of Pennsylvania.  (Id. ¶¶ 3, 13.)  Block is an investor and a resident of

Texas.  (Id. ¶¶ 2, 14.)  Muddy Waters, LLC, is a limited liability company owned solely by

Block, organized under the laws of Nevada, and principally based in Texas.  (Id. ¶ 15.)

After first meeting face-to-face in Manhattan on April 13, 2011, Barnes and Block

agreed to work together on a "series of research projects concerning inflated stock prices of

U.S.-listed companies based in the [People's Republic of China]."  (Id. ¶¶ 2-3, 37-39.)  As part of

their working relationship, Barnes and Block collaborated to prepare reports regarding

potentially overvalued stock.  (Id. ¶¶ 33-34.)  The parties "alternate[ed] . . . who would incur the

cost of a particular report," and had agreed, if they sold any reports, to share in the net revenue

from such transactions.  (Id. ¶ 40.)  Defendant Muddy Waters was used as the brand for the

published reports and was intended to be the "public face of all investment opportunities

associated with Block."  (Id. ¶ 48.)  Barnes was primarily responsible for the research and

---

[1]    The parties' submissions refer to state residency rather than domicile, but neither
       contends that any individual party is domiciled in a state other than those indicated.

writing that went into the preparation of the reports.  (Id. ¶ 40.)  The parties made separate stock investments in connection with the release of the reports.  (Id. ¶ 46.)

On September 14, 2011, the parties met in Manhattan to discuss a new research project centered on Focus Media, which was a Chinese advertising company listed on the NASDAQ exchange.  (Id. ¶¶ 42-43.)  At that meeting the parties "hashed out the terms of an oral partnership agreement to pursue research on Focus Media" and decided that Plaintiff would provide the "research and financial analysis" and Defendants "would publicize the findings." (Id. ¶¶ 45-46.)  The parties "shook hands on the partnership" and "expressly used the term 'partnership' and have never deviated from that designation."  (Id. ¶ 51.)  They also agreed to conduct their research confidentially and anonymously and, in service of those goals, referred to the project as "Project PHOENIX," utilized pseudonyms, and communicated exclusively over Block's hosted encrypted email and cloud infrastructure on Kimpax.com.  (Id. ¶¶ 49-50.)  Block maintained control over the communication platform throughout the relevant period and removed Plaintiff's access some years prior to the Complaint.  (Id. ¶ 50 & n.11.)

Following their research, the parties published their final report, entitled "FMCN: The Olympus of China" (the "Report"), through email push notifications, Twitter and media outreach on November 21, 2011, which caused Focus Media's stock price to drop precipitously. (Id. ¶¶ 62-65, 69.)  Block also sold the research to a third-party investment fund and, consistent with the parties' partnership agreement, remitted to Barnes his share of the net revenue from the sale.  (Id. ¶ 68.)  In December 2011, the SEC opened a "Matter Under Inquiry" concerning Focus Media, which the SEC subsequently stated was triggered by one of its attorneys' discovery of the Report through public internet sources.  (Id. ¶ 71.)  Soon thereafter, Block told Barnes that the SEC had contacted Muddy Waters to discuss the findings in the Report and that Barnes need not

personally communicate with the SEC because the SEC was aware that Barnes was a co-author of the Report and Block and Muddy Waters would interface with the SEC.  (Id. ¶¶ 72-76.)

   On September 30, 2015, the SEC released a Notice of Covered Action announcing a $55.6 million settlement with Focus Media (the "Notice").  (Id. ¶ 79.)  The Notice explained that the Report had caused SEC enforcement staff to open an investigation into Focus Media, ultimately leading to the successful Covered Action.  (Id. ¶ 80.)  The SEC then announced that it would accept applications from those who had provided "material information" to the SEC to determine whether anyone was entitled to a whistleblower award under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd Frank").  (Id. ¶¶ 81-82.)  Sometime later, Plaintiff reached out to Block to discuss the potential award, informed Block that they would need to submit an application to the SEC within ninety days, and suggested they engage specialized whistleblower counsel to help navigate the process.  (Id. ¶¶ 85-88.)  Block initially responded that he would look into "whether it's potentially eligible," but he then failed to communicate with Plaintiff for the next several weeks despite Plaintiff's continued attempts at communication.  (Id. ¶¶ 86, 89.)  On January 19, 2016, shortly before the SEC's ninety-day deadline, Block informed Barnes that he "already had counsel handle this," although he had made the submission on his own behalf and failed to include Barnes in the process.  (Id. ¶ 91.)  Barnes then submitted his own application without retaining counsel.  (Id. ¶ 92.)

   On July 29, 2019, the SEC's "Claims Review Staff" preliminarily denied both applications, explaining that neither Barnes nor Block was a "whistleblower" within the meaning of Rule 21F-2(a) because their online publication of the Report did not constitute a "voluntary submission of information" to the SEC.  (Id. ¶¶ 95-96.)  When Block requested the record for the determination, he received a heavily redacted declaration from which he could not determine

"what, if anything, Mr. Block or Muddy Waters communicated to the SEC concerning the relationship with or role of Mr. Barnes [in preparing the Report]." (Id. ¶ 100.) On March 11, 2022, the SEC issued a Final Order denying Plaintiff's application but utilizing its discretion to grant Block's application for a $14 million award. (Id. ¶¶ 103-105.) Following receipt of the Final Order, Barnes, through counsel, reached out to Block to "ascertain the truth of what Mr. Block had told (or failed to tell) the SEC concerning Mr. Barnes' involvement . . . [and] Mr. Block did not respond." (Id. ¶ 113.) In April 2022, Barnes appealed the Final Order decision to the Third Circuit, and his appeal was denied on March 23, 2023. Doe v. SEC, No. 22-1652, 2023 WL 3562977 (3d Cir. Mar. 23, 2023). The parties reported in their February 23, 2024 status update that Barnes has now exhausted his appeals of the SEC award determination, and Block has in fact received the $14 million payment. (Docket entry no. 38.)

Plaintiff initiated this suit in the New York County Supreme Court by filing a Summons with Notice on July 25, 2022. (Docket entry no. 1 ("Notice of Removal").) Defendants removed this action to federal court on August 24, 2022, pursuant to 28 U.S.C. section 1446. (Id.) Following removal, Plaintiff filed his Complaint on September 28, 2022. (Compl.) On August 25, 2022, Defendants filed a defamation suit against Barnes in the Western District of Texas arising from Barnes' public statements alleging that a partnership existed between them; that action was dismissed on July 18, 2023, for improper venue and lack of personal jurisdiction over Barnes. (Id. ¶ 117; see also Block v. Barnes ("Block I"), No. 22-CV-00969-DAE, 2023 WL 4582396 (W.D. Tex. July 18, 2023).) Defendants have since refiled their defamation claim in the Eastern District of Pennsylvania. (Docket entry nos. 35, 36; see also Block v. Barnes ("Block II"), No. 23-CV-2483-MMB (E.D. Pa. filed June 28, 2023).)

<u>D</u>ISCUSSION

<u>Mooted Issues</u>

   In their Motion to Dismiss, which was originally filed before another judge of this Court on October 18, 2022, Defendants advanced two arguments that have been mooted by subsequent developments.  First, Defendants asserted that Barnes' claims in this action were compulsory counterclaims to the then-pending defamation case in the Western District of Texas, <u>see</u> <u>Block I</u>, because the Complaint in this action was filed days after the Complaint in that action.  (Docket entry no. 15 ("Def. Mem.") at 23-24.)  Defendants have withdrawn the argument as moot because that action was dismissed for improper venue and lack of personal jurisdiction over Barnes.  (<u>See</u> docket entry no. 34.)

   Second, Defendants argued that Plaintiff's unjust enrichment and constructive trust claims were not ripe for review because Plaintiff had not yet exhausted his appeal of the SEC's award determination and because Defendants had not come into possession of their awarded money.  (Def. Mem. at 9-11.)  As noted above, Plaintiff's appeals are now exhausted, Block is in possession of the $14 million award, less the attorney's fees paid, and Defendants have withdrawn their ripeness argument.  (Docket entry no. 38.)

   The Court next turns to the Defendants' three remaining grounds for dismissal: lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules for Civil Procedure, <u>forum</u> <u>non</u> <u>conveniens</u>, and failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules for Civil Procedure.

Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a federal court must dismiss claims against a party when the court determines that it does not have personal jurisdiction over that party. The party asserting jurisdiction "bears the burden of establishing that the court has jurisdiction" over the movant "when served with a Rule 12(b)(2) motion to dismiss." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). Courts may rely on additional materials outside the pleadings when ruling on a Rule 12(b)(2) motions, Minnie Rose LLC v. Yu, 169 F. Supp. 3d 504, 510 (S.D.N.Y. 2016), but must still "credit the plaintiff's averments of jurisdictional fact (but not their conclusions) as true, and must construe all allegations in the light most favorable to the plaintiff," Sidik v. Royal Sovereign Int'l, Inc., No. 17-CV-7020, 2020 WL 5441306, at *6 (E.D.N.Y. Sept. 10, 2020) (quoting Brown v. City of N.Y., No. 10-CV-5229, 2013 WL 3245214, at *3 (E.D.N.Y. June 26, 2013)). In evaluating a motion to dismiss for lack of personal jurisdiction, the Court must first determine whether the exercise of personal jurisdiction is proper according to the law "of the forum state, in this instance New York." Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). If the exercise of jurisdiction is authorized under New York law, "the court must then decide whether such exercise comports with the [federal constitutional] requisites of due process." Id.

Plaintiff asserts that this Court has specific jurisdiction over both Defendants due to their relevant contacts in the state. (Docket entry no. 23 ("Pl. Mem.") at 10-12.) Pursuant to New York's long-arm statute, CPLR section 302(a)(1), a court may exercise jurisdiction "over a foreign defendant for causes of action that arise out of 'transacting any business within the state,' whether in person or through an agent." Spetner v. Palestine Inv. Bank, 70 F.4th 632, 639 (2d Cir. 2023) (quoting CPLR § 302(a)(1)). A defendant "transacts business" in New York when it

"purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." Id.

Barnes has alleged that, on three separate instances, he and Block, who is also the sole owner and principal of Muddy Waters, met in New York City to discuss their partnership. According to Barnes, first, Barnes and Block met in Manhattan on April 13, 2011, to discuss research and investment opportunities, which became the focus of the alleged partnership. (Compl. ¶ 37.) The two met in Manhattan again on September 14, 2011, to discuss the Focus Media investigation and, at that time and place, allegedly formed their oral partnership agreement concerning the Focus Media project. (Id. ¶¶ 42-43.) After publication of the Report, Barnes and Block met in Manhattan a third time to discuss the developments and "backlash" from the Report.[2] (Id. ¶¶ 52-53.) The Court is satisfied that the alleged pattern of repeated business meetings, forming pivotal moments in the alleged partnership and relevant events, shows that Defendants purposefully availed themselves of the forum of New York in connection with the business activities from which Plaintiff's claims arise. Even a single business meeting may alone be sufficient to provide specific jurisdiction over a defendant. See, e.g., Cooper, Robertson & Partners, LLP v. Vail, 143 F. Supp. 2d 367, 372 (S.D.N.Y. 2001) (finding, based on a single business meeting in New York, that the Court had personal jurisdiction over the defendant because the meeting was "significant to the development of the contractual relationship" (collecting cases)). The argument for exercising personal jurisdiction is even

---

[2]     Barnes also alleges that, although much of Block's work for this partnership was performed elsewhere, Barnes performed substantial portions of the work in Manhattan. (Docket entry no. 24 ("Barnes Decl.") ¶ 7.) This is, however, irrelevant for determining whether Defendants "purposefully availed" themselves of New York's jurisdiction. "[I]t is the law in New York that an agent-plaintiff's in-state activities cannot be imputed to the principal-defendant for jurisdictional purposes." Geller v. Newell, 602 F. Supp. 501, 503 (S.D.N.Y. 1984) (collecting cases).

stronger here, where Plaintiff alleges that the parties negotiated and entered into a contractual relationship in Manhattan during two separate meetings.  See, e.g., Geller, 602 F. Supp. at 503 (finding jurisdiction where defendant, during a single visit to New York, negotiated and agreed in principle to a contract, which was then executed elsewhere).  Therefore, the Court finds that Block and, through him, his LLC, Muddy Waters, had sufficient relevant contacts with New York to subject them to suit for claims arising out of the alleged partnership agreement pursuant to New York's long-arm statute.

The Court further finds that exercise of personal jurisdiction over Defendants in this circumstance is consistent with due process.  To determine whether the exercise of personal jurisdiction is constitutional requires two inquiries:  the "minimum contacts" inquiry and the "reasonableness" inquiry.  Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010).  The allegations of the Complaint plausibly allege that Defendants engaged in the requisite "minimum contacts" with New York through their business transactions in this state, which specifically give rise to the claims in this action.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n.8 (1984) (discussing the different standards of "minimum contacts" necessary for the exercise of specific jurisdiction in comparison to general jurisdiction over a defendant).  Furthermore, exercise of specific personal jurisdiction in this circumstance complies with "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

For these reasons, Defendants' motion is denied insofar as it seeks dismissal of the Complaint for lack of personal jurisdiction.[3]

---

[3]      Because the Court concludes that it has specific jurisdiction over Muddy Waters in this action, it need not address Plaintiff's alternative argument that Muddy Waters' contacts

<u>Forum Non Conveniens</u>

"The principle of <u>forum</u> <u>non</u> <u>conveniens</u> is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 507 (1947). "Accordingly, 'the central focus of the <u>forum</u> <u>non</u> <u>conveniens</u> inquiry is convenience' and 'dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice.'" <u>Celestin v. Martelly</u>, 698 F. Supp. 3d 443, 455 (E.D.N.Y. 2023) (citing <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 249 (1981)). District courts enjoy "broad discretion" when applying this principle, and the Second Circuit has outlined a three-step process "to guide the exercise of that discretion." <u>Norex Petroleum Ltd. v. Access Ind., Inc.</u>, 416 F.3d 146, 153 (2d Cir. 2005). Step one requires the Court to determine the degree of deference properly accorded the plaintiff's forum choice. <u>Iragorri v. United Tech. Corp.</u>, 274 F.3d 65, 70 (2d Cir. 2001). Next, the Court must consider whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. <u>Id.</u> at 73. Finally, a court balances the private and public interests implicated in the choice of forum. <u>Id.</u>

Ordinarily, courts should defer to a plaintiff's choice of forum, but "the degree of deference given to a plaintiff's forum choice varies with the circumstances." <u>Id.</u> at 71. A plaintiff's choice to sue in a forum outside of their home state may be entitled to less deference, <u>Piper Aircraft</u>, 454 U.S. at 256 n.6, because the choice of such a forum is not presumed to have been made for Plaintiff's convenience and raises forum shopping concerns, <u>Iragorri</u>, 274 F.3d at

with New York were so "systemic and continuous" to confer general jurisdiction. (Pl. Mem. at 9-10.)

71.  In such circumstances, "[t]he more it appears that a . . . foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." Id. at 72-73.  Legitimate reasons for choosing a particular forum include, inter alia, the availability of witnesses or evidence in the forum district, the defendant's amenability to suit in the forum district, and the convenience of the forum district to the plaintiff's residence.  Id. at 72.  The Court finds that, here, these factors counsel great deference be given to Plaintiff's forum selection.  Available forums in which Defendants are amenable to suit for the claims underlying this litigation are few and far between.  Plaintiff alleges that the relevant events underlying this action (namely, the parties' meetings and relevant work) took place solely in New York, California, and Asia.  (Barnes Decl. ¶ 8; see generally Compl.)  Because Block is a resident of Texas, he would also be amenable to suit in that forum.[4] Among the available forums for his suit at the initiation of this action, it is a legitimate choice for Barnes not to litigate his claims across the country in Texas, with which he apparently has no relevant connections.  Furthermore, this forum has access to relevant evidence and would not be overly cumbersome for witnesses because the primary witnesses in this case are the parties themselves, all of whom allegedly have business connections to New York.  Additionally, the Defendants' proposed alternative forum of Pennsylvania is unlikely to be more convenient than New York for any third parties asked to participate in the litigation.

---

[4]    Additionally, Plaintiff is a resident of Pennsylvania and Defendants have proffered that they are amenable to conduct of the litigation in that forum in connection with their defamation suit, which was brough in the Eastern District of Pennsylvania almost a year after Plaintiff initiated this action in New York.  (Docket entry no. 38; see also Block II.)  Because at the time of forum selection Plaintiff would have had no reason to anticipate Defendants' amenability to suit in Pennsylvania, a state with no nexus to the facts underlying the claims at issue in this action, the Defendants' late proffer of amenability to suit in Plaintiff's home state does not raise any relevant forum shopping concerns.

No issue has been raised by either party as to the viability of Pennsylvania as an alternative forum, which may be adequate to adjudicate the parties' dispute.

Finally, Defendants argue that the balance of the public and private interests in this case supports a dismissal because "New York has no interest in this case."  (Def. Mem. at 21.)  This assertion, however, is unpersuasive.  Plaintiff has alleged that a partnership agreement was formed in New York City under New York state law, and courts have routinely upheld the principle that New York has "an interest in ensuring that business relationships formed under the laws of New York are not disturbed[.]"  Ahmed v. Purcell, No. 14-CV-7491-KPF, 2016 WL 1064610, at *11 (S.D.N.Y. Mar. 14, 2016); see, e.g., In re Koreag, Controle et Revision S.A., 961 F.2d 341, 351 (2d Cir. 1992) (finding, in a choice of law analysis, that New York had the greater interest in the contract rights of parties because the "relationships are ordinarily regulated under New York law, and New York is concerned with how [the law operates with respect to an organization formed under New York law]").  Therefore, the both the first and final element of the Iragorri test weigh in favor of denying Defendants' motion.

Accordingly, after weighing the appropriate Iragorri factors, the Court denies Defendants' motion for dismissal of the action on forum non conveniens grounds.

Merits of Claims

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This requirement is satisfied when the factual content of the complaint "allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  Id. (citation omitted).  A complaint that contains only "naked

assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice.

Twombly, 550 U.S. at 555.  "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the

facts asserted in the complaint and draws all reasonable inferences from those facts in favor of

the plaintiff."  Sara Designs, Inc. v. A Classic Time Watch Co., No. 16-CV-3638-LTS, 234 F.

Supp. 3d 548, 554 (S.D.N.Y. Feb. 15, 2017) (citing Harris v. Mills, 572 F.3d 66, 71 (2d Cir.

2009)).

        Unjust Enrichment Claim

        A claim for unjust enrichment is "founded upon the equitable principle that a

person should not be allowed to enrich himself unjustly at the expense of another."  Indyk v.

Habib Bank Ltd., 694 F.2d 54, 57 (2d Cir. 1982).  This principle applies in situations where no

legal contract exists, but where the defendant is "in possession of money or property which in

good conscience and justice he should not retain, but should deliver to another."  Matarese v.

Moore-McCormack Lines, 158 F.2d 631, 634 (2d Cir. 1946).  Defendants do not dispute that

Plaintiff has adequately alleged a prima facie case for unjust enrichment.  Rather, Defendants

argue that the claim should be dismissed because Plaintiff also pleads that there is an enforceable

oral partnership agreement between the parties, which gives rise to his breach of fiduciary duty

claim, such that the claims are inconsistent.  (Def. Mem. at 14-15; docket entry no. 27 ("Reply

Mem.") at 8; see also Compl. ¶ 132.)

        It is well settled that parties may plead in the alternative.  Fed. R. Civ.

P. 8(d)(2)-(3).  "Particularly where, as here, there . . . [is a] dispute as to whether a valid contract

exists, parties can and routinely do plead in the alternative fraud, unjust enrichment, and

[contract-based claims]."  Burton v. Iyogi, Inc., No. 13-CV-6926-DAB, 2015 WL 4385665, at

*11 (S.D.N.Y. Mar. 16, 2015) (collecting cases).  Although Plaintiff alleges that the oral

agreement formed a valid and enforceable partnership, "unjust enrichment may serve as a basis

for recovery should a trier of fact determine that, in fact, no valid contract was formed or that the

contractual obligations did not encompass the [underlying events]."  Net2Globe Int'l, Inc. v.

Time Warner Telecom of N.Y., 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003) (citing Newman &

Schwartz v. Asplundh Trees Expert Co. Inc., 103 F.2d 660, 663 (2d Cir. 1996)).

    Defendants argue that Plaintiff's unjust enrichment claim is "not merely 'in the

alternative;' it is legally incoherent" because it relies on a finding that there was no enforceable

partnership agreement between the parties.  (Def. Mem. at 3.)  There is, however, nothing

"logically incoherent" about Plaintiff's pleading in the alternative where he will bear the burden

of establishing that there was an enforceable partnership agreement in order to prevail on his

fiduciary duty claim.  It is precisely the purpose of pleading in the alternative to allow a Plaintiff

to advance separate theories of recovery premised on a disputed fact.  See Burton, 2015 WL

4385665, at *11.

    Therefore, Defendants' motion is denied insofar as it seeks dismissal of Plaintiff's

unjust enrichment claim.

    <u>Breach of Fiduciary Duty</u>

    Plaintiff alleges that Defendants, as his partners in the Focus Media research and

reporting project, breached fiduciary duties to him when they pursued the SEC whistleblower

award for their own benefit and obfuscated Barnes' role in the precipitating Report.  To state a

plausible claim for breach of fiduciary duty, Plaintiff must allege specific facts about the alleged

relationship with "sufficient particularity to enable the Court to determine whether, if true, such

facts could give rise to a fiduciary relationship."  World Wrestling Entm't, Inc. v. Jakks Pac.,

<u>Inc.</u>, 530 F. Supp. 2d 486, 504 (S.D.N.Y. 2007) (cleaned up).  Plaintiff alleges that he and Defendants formed an oral partnership agreement, which — if his allegations are credited — would require each party comply with a fiduciary duty of loyalty to the partnership.  <u>See</u> <u>Birnbaum v. Birnbaum</u>, 73 N.Y.2d 461, 465-66 (1989).  Plaintiff alleges that Block breached his duty of loyalty by failing either to credit Plaintiff for his role in the Report or to compensate Plaintiff for his portion of the $14 million award.  (Compl. ¶ 134.)

Defendants advance three arguments for dismissal.  First, as discussed above, Defendants assert that the fiduciary duty claim is "incompatible" with an unjust enrichment claim.  (Def. Mem. at 14.)  This argument fails for the reasons previously stated.  Next, Defendants assert that Plaintiff has failed to allege sufficient facts to establish that the parties had established a partnership.  (<u>Id.</u> at 12.)  Finally, Defendants assert that, even if there were a valid partnership, Plaintiff's fiduciary breach claim is time-barred.  (<u>Id.</u> at 21.)  The Court will discuss these latter arguments in turn.

<u>Plausibility of Partnership Allegation</u>

Plaintiff has alleged that he and Block formed an oral partnership agreement during their April 2011 meeting in Manhattan.  (Compl. ¶ 132.)  Plaintiff further alleges that the parties formed a specific joint venture regarding the Focus Media investigation and Report in Manhattan in September 2011.  (<u>Id.</u> ¶ 42.)  Where there is no written partnership agreement, courts must consider certain factors to determine whether a joint venture exists.  <u>Richbell Info.</u> <u>Servs., Inc. v. Jupiter Partners, L.P.</u>, 309 A.D.2d 288, 289 (N.Y. App. Div., 1st Dep't 2003).  These factors are: "1) the sharing of profits and losses of the enterprise; 2) the joint control and management of the business; 3) the contribution by each party of property, financial resources, effort skill or knowledge; and 4) an intention of the parties to be partners."  <u>N. Am. Knitting</u>

Mills, Inc. v. Int'l Women's Apparel, Inc., No. 99-CV-4643-LAP, 2000 WL 1290608, at *2 (S.D.N.Y. Sept. 12, 2000) (citations omitted).  "The absence of a single element is fatal to the establishment of a partnership."  Fried v. Kelly, No. 06-CV-1528-HB, 2007 WL 1821697, at *5 (S.D.N.Y. June 26, 2007).

    Plaintiff's factual allegations are sufficient to support the inference that the parties entered into a partnership.  First, Plaintiff has alleged that the parties agreed that they would share profits and losses from the Report, including that they "had agreed that [if they were to sell the reports to third-parties], they would share in the net revenues from such a transaction." (Compl. ¶ 40.)  Indeed, Plaintiff alleges that, after the sale of the FMCN Report to a third party, Block "remitted to Mr. Barnes his share of the net revenue, after total project expenses, from that sale."  (Id. ¶ 68.)  This prong requires Plaintiff to plead adequate facts showing that the parties agreed to share losses as well as profits.  See Ely v. Perthuis, No. 12-CV-1078-DAB, 2013 WL 411348, at *6 n.5 (S.D.N.Y. Jan. 29, 2013) (finding no partnership where plaintiff alleged the parties "agreed to be 50/50 partners" solely with "conclusory language," except for a single term of the agreement which only referenced a commitment to share profits).  The only exception to this rule is when a particular partnership or joint venture did not entail any "reasonable expectation of losses."  Fat Brands Inc. v. Ramjeet, 75 F.4th 118, 129-30 (2d Cir. 2023) (internal citation omitted).  Relevant to potential losses, Plaintiff alleges that the parties alternated incurring "the cost of a particular report" without alleging further specifics as to what comprised those costs.  (Compl. ¶ 40.)  The Court finds that this allegation, viewed in the light most favorable to Barnes, supports a plausible inference that the parties' agreement encompassed loss-sharing.  See Dundes v. Fuersich, 6 Misc. 3d 882, 885 (Sup. Ct. N.Y. Cnty., 2004) (finding a

joint venture where "[t]he only losses the parties allegedly contemplated and discussed were the

losses each would incur in producing and publishing books that did not sell").

       Second, Plaintiff further alleges that the parties jointly controlled the Focus Media

investigation and the creation of the Report.  Control need not be <u>equal</u> to satisfy this element, so

long as each party exercised "<u>any</u> measure of control."  <u>Richbell</u>, 309 A.D.2d at 299 (emphasis in

original) (citing <u>De Vito v. Pokoik</u>, 540 N.Y.S.2d 858 (1989)).  Plaintiff alleges that Barnes

oversaw contractor work in Asia (Compl. ¶ 56), that he controlled the lion's share of the Report's

drafting process (<u>id.</u> ¶¶ 61-62), and that the parties jointly agreed to and determined how to

distribute the Report (<u>id.</u> ¶¶ 63-64).  These allegations satisfy the requirement, even if the parties

did not "exercise the same degree of management control."  <u>Richbell</u>, 309 A.D.2d at 299.

       Third, Plaintiff alleges that each party contributed to the joint undertaking.  As

noted above, Barnes alleges that he contributed to the costs of the investigation and the Report.

Plaintiff also alleges that he contributed unique skill, expertise, and research that was necessary

to the success of the Focus Media investigation.  (Compl. ¶¶ 21, 31, 44.); <u>see</u> <u>Ackerman v.</u>

<u>Landes</u>, 112 A.D.2d 1081, 1082 (N.Y. App. Div., 2d Dep't 1985) (describing the "essential

element" of a joint venture to include "a contribution by the coventurers to the joint undertaking

(i.e., a combination of property, financial resources, effort, skill or knowledge)").

       Finally, Plaintiff alleges facts that, when viewed in the light most favorable to his

claim, support a finding that the parties' agreement manifested an intent to be associated as

partners in a joint venture.  Barnes alleges that, "at the end of the September 14[, 2011]

meeting," the parties "shook hands on the partnership" and "expressly used the term

'partnership'" to characterize their relationship, and that they "have never deviated from that

designation."  (Compl. ¶ 51.)  Defendants' argument that "simply 'calling an organization a

partnership does not make it one'" (Def. Mem. at 14 (citing N. Am. Knitting, 2000 WL 1290608,

at *2)) does not undermine the significance of this allegation.  Unlike the plaintiffs in cases

Defendant relies upon, Plaintiff here identifies a specific instance wherein the parties explicitly

used the term "partners," and supports that allegation with additional examples of behavior

manifesting an intent to function as a partnership, as discussed above.  These allegations, taken

together, satisfy his burden at the pleading stage.

Therefore, the Court finds that Plaintiff's allegations plausibly support an

inference that Barnes and Block formed an oral partnership agreement and that the FMCN

Report was the product of a joint venture undertaken by that partnership.

Statute of Limitations

In the alternative, Defendants also argue that, even if a partnership were formed,

any breach of fiduciary duty claim accrued at the time of the whistleblower applications (January

2016) and is now time-barred.

The Court may only dismiss a claim based on an affirmative defense presented on

a Rule 12(b)(6) motion if the grounds for dismissal are evident on the face of the claim itself.

Jones v. Block, 549 U.S. 199, 215 (2007).  Plaintiff is "not required to allege in the [Complaint]

all the circumstances necessary to negate [any] affirmative defense[s]."  In re Lehman Bros. Sec.

& ERISA Litig., 799 F. Supp. 2d 258, 318 (S.D.N.Y. 2011).  Therefore, the central question for

the Court's consideration at this stage is whether Defendants' statute of limitations defense

"appears on the face of the complaint."  Ellul v. Congregation of Christian Bros., 774 F.3d 791,

789 n.12 (2d Cir. 2014); see also Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir.

1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a

defendant may raise the affirmative defense in a pre-answer motion to dismiss.").  The statute of

limitations for a breach of fiduciary duty claim seeking primarily monetary relief is three years.[5]

See Malmsteen v. Berdon, LLP, 477 F. Supp. 2d 655, 666-67 (S.D.N.Y. 2007).  The claim

"accrues as soon as 'the claim becomes enforceable, i.e., when all elements of the tort can be

truthfully alleged in a complaint' . . . [and] the claim 'is not enforceable until damages are

sustained.'"  Wagley v. JP Morgan Chase Bank, N.A., No. 18-CV-8668-PGG, 2020 WL

5768688, at *10 (S.D.N.Y. Sept. 26, 2020) (quoting IDT Corp. v. Morgan Stanley Dean Witter &

Co., 12 N.Y.3d 132, 140 (2009)).  The Court must therefore "consider whether plaintiff's

complaint must, as a matter of law, be read to allege damages suffered so early as to render the

claim time-barred."  Id. (quoting IDT Corp., 12 N.Y.3d at 140).

        Plaintiff alleges that Block breached the fiduciary duty he owed to the partnership

by "failing to credit Mr. Barnes for his role in the FMCN Report to the SEC or compensating

him for his portion of the $14 million whistleblower award."  (Compl. ¶ 134.)  Although

Plaintiff's claim is predicated on the whistleblower award application that Block submitted in

January 2016, Plaintiff's claim had not accrued under New York law at the time of the

submission because he had yet to be left out of any whistleblower award.  (Id. ¶¶ 89, 92.)  On

March 11, 2022, the SEC issued the Final Order, which granted Block's application and denied

Plaintiff's application.  (Id. ¶¶ 103-104.)  In their Reply Memorandum, Defendants assert, "[t]o

the extent Plaintiff's breach of fiduciary duty claim does not accrue until he suffers damages, his

claim has still not accrued, since no SEC whistleblower award . . . will be finally determined

until [the appeal] is resolved."  (Reply Mem. at 9.)  As noted above, Plaintiff's Third Circuit

appeal was denied in March 2023.  Doe v. SEC, No. 22-1652, 2023 WL 3562977 (3d Cir. Mar.

---

[5]      Both parties rely on New York and Second Circuit authority in their argumentation, and the Court does the same.

23, 2023).  Therefore, the Court finds that the face of the complaint indicates that the breach of

fiduciary duty claim did not accrue until March 2023, after the date of the Complaint, and is

therefore not time-barred.

For these reasons, the Court denies Defendants' motion insofar as it seeks the

dismissal of Count Three of the Complaint.

Constructive Trust

"To be entitled to a constructive trust under New York law, a party must establish

four elements: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a

transfer made in reliance on that promise; and (4) unjust enrichment."  Brand v. Brand, 811 F.2d

74, 77 (2d Cir. 1987) (citations omitted).  Defendants assert that this claim should be dismissed

because a constructive trust is a "remedy, not a cause of action."  (Def. Mem. at 22 (citations

omitted).)  While courts in this district have allowed constructive trust claims to proceed as

separate causes of action, see, e.g., City of Almaty v. Ablyazov, 278 F. Supp. 3d 776, 802

(S.D.N.Y. 2017); Winklevoss v. Cap. Fund, LLC v. Shrem, 351 F. Supp. 3d 710, 721 (S.D.N.Y.

2019), the Second Circuit has historically treated constructive trusts under New York law as a

remedy for unjust enrichment rather than a separate cause of action, see, e.g., In re First Central

Fin. Corp., 377 F.3d 209, 215-16 (2d Cir. 2004).  Even if a constructive trust claim cannot

proceed as an independent cause of action, "plaintiffs may, if appropriate, later request, as a

remedy, the imposition of a constructive trust."  Winklevoss, 351 F. Supp. 3d at 721 (quoting

Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 420 (S.D.N.Y. 2010)).  Notably, a

constructive trust is an equitable remedy "to be imposed only in 'the absence of an adequate

remedy at law.'"  Anwar, 728 F. Supp. 2d at 419 (quoting Gary Friedrich Ent., LLC v. Marvel

Ent., Inc., 713 F. Supp. 2d 215, 222 (S.D.N.Y. 2010)).

Plaintiff has asserted two additional claims that survive Defendants' motion to dismiss and, if successful, may yield a substantial monetary recovery.  At this stage, the Court cannot determine whether the equitable remedy of a constructive trust would be appropriate or if Plaintiff's other claims will provide "an adequate remedy at law."  <u>Anwar</u>, 728 F. Supp. 2d at 419.  Therefore, the Court finds the question of whether to impose a constructive trust is one better considered after the merits of plaintiff's unjust enrichment and fiduciary breach claims have been determined.  <u>See also</u> <u>I.B. Trading, Inc. v. TriPoint Glob. Equities, LLC</u>, 280 F. Supp. 3d 524, 545 (S.D.N.Y. 2017); <u>Blank v. TriPoint Glob. Equities, LLC</u>, 338 F. Supp. 3d 194, 220 (S.D.N.Y. 2018).  Defendants' motion to dismiss the separate constructive trust claim, Count Two, is granted, without prejudice to pursuit of constructive trust as a remedy if Defendants' liability is established.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is denied insofar as it seeks dismissal of the entire Complaint for lack of personal jurisdiction over Defendants and of Counts One and Three for failure to state a claim upon which relief may be granted.  Count Two is dismissed as premature, without prejudice to pursuit of constructive trust as a remedy to the extent Plaintiff prevails on any of his surviving claims.  Defendants have withdrawn their requests for dismissal of the Complaint for lack of subject matter jurisdiction and as a compulsory counterclaim to the now-dismissed Western District of Texas action, Barnes I.

Defendants are directed to file an answer to the Complaint within **21 days after the entry of this order**.  This action will be referred to Magistrate Judge Lehrburger for general pretrial management.  This Memorandum Order resolves docket entry no. 14.


        SO ORDERED.

Dated: New York, New York
        June 23, 2025

                                   /s/ Laura Taylor Swain
                                   LAURA TAYLOR SWAIN
                                   Chief United States District Judge