UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN BARNES,

                Plaintiff,

    -against-

CARSON BLOCK and MUDDY WATERS,
LLC,

                Defendants.

22 Civ. 7236 (LTS) (HJR)


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
THE FOURTH CAUSE OF ACTION IN THE AMENDED COMPLAINT**


Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

TABLE OF CONTENTS

<u>PAGE NO.</u>

PRELIMINARY STATEMENT ........................................................................................................1

ALLEGATIONS IN THE AMENDED COMPLAINT ................................................................4

PROCEDURAL HISTORY............................................................................................................9

LEGAL STANDARD...................................................................................................................10

ARGUMENT................................................................................................................................10

     I.     THE STATUTE OF FRAUDS BARS PLAINTIFF'S CONTRACT
           CLAIM...........................................................................................................................10

     II.    PLAINTIFF HAS NOT ADEQUATELY PLED A BREACH OF
           CONTRACT CLAIM ...................................................................................................15

           A.    Plaintiff Does Not Adequately Plead the Existence of a Contract.............15

           B.    Plaintiff Does Not Plead with Definiteness the Essential Terms of
                the Contract.................................................................................................18

           C.    Plaintiff Does Not Adequately Plead That He Performed Under
                the Contract.................................................................................................21

            D.    Plaintiff Does Not Adequately Plead That Defendants Breached
                the Contract.................................................................................................22

CONCLUSION.............................................................................................................................23

CERTIFICATION ........................................................................................................................24

i

TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009).................................................................................................. 10

*Balder v. Sarandon*,
　No. 22-CV-06401 (JLR)(SN), 2023 WL 9232957 (S.D.N.Y. Dec. 18, 2023) ................. 14

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007).................................................................................................. 10

*Boustead Sec., LLC v. Leaping Grp. Co.*,
　No. 20-CV-3749 (VEC), 2021 WL 3774116 (S.D.N.Y. Aug. 25, 2021) ......................... 21

*Caro Cap., LLC v. Koch*,
　No. 20-CV-6153 (LJL), 2021 WL 1595843 (S.D.N.Y. Apr. 23, 2021) ............... 18, 19, 21

*Combustion Prods. Mgmt., Inc. v. AES Corp.*,
　256 F. App'x 441 (2d Cir. 2007) ................................................................................ 23

*DiFolco v. MSNBC Cable L.L.C.*,
　622 F.3d 104 (2d Cir. 2010)..................................................................................... 8, 15

*Dixon v. von Blanckensee*,
　994 F.3d 95 (2d Cir. 2021)............................................................................................ 4

*Doe (Claimant #2) v. Sec. & Exch. Comm'n*,
　No. 22-1652, 2023 WL 3562977 (3d Cir. Mar. 23, 2023)................................. 7, 9, 20, 22

*Fink v. Time Warner Cable*,
　810 F. Supp. 2d 633 (S.D.N.Y. 2011)........................................................................... 19

*Fischer & Mandell, LLP v. Citibank, N.A.*,
　632 F.3d 793, 799 (2d Cir. 2011)................................................................................. 15

*Generation Next Fashions Ltd. v. JP Morgan Chase Bank, N.A.*,
　698 F. Supp. 3d 663 (S.D.N.Y. 2023)........................................................................... 19

*Grasso v. Donnelly-Schoffstall*,
　No. 21-1021, 2022 WL 728839 (2d Cir. Mar. 11, 2022)............................................ 11, 14

*Guterman v. RGA Accessories, Inc.*,
　196 A.D.2d 785 (1st Dep't 1993) ................................................................................. 12

*Hecht v. Helmsley-Spear, Inc.*,
　65 A.D.3d 951 (1st Dep't 2009) ............................................................................. 19, 20

*Hyman, Inc. v. Olsen Indus., Inc.*,
    227 A.D.2d 270 (1st Dep't 1996) ............................................................................ 18

*Johnson v. Giles*,
    No. 1:23-CV-2444 (MKV), 2024 WL 4240446  (S.D.N.Y. Sept. 19, 2024) ............. 11, 12

*Katz v. Donna Karan Co. Store, L.L.C.*,
    872 F.3d 114 (2d Cir. 2017)....................................................................................... 4

*Negrete v. Citibank, N.A.*,
    187 F. Supp. 3d 454 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) ................. 18

*Noriega v. Abbott Lab'ys*,
    714 F. Supp. 3d 453 (S.D.N.Y. 2024)...................................................................... 16

*Rosenthal v. Kingsley*,
    674 F. Supp. 1113 (S.D.N.Y. 1987)......................................................................... 11

*Swan Media Grp., Inc. v. Staub*,
    841 F. Supp. 2d 804 (S.D.N.Y. 2012)...................................................................... 21

*Tal v. Computech Int'l, Inc.*,
     No. 21-CV-05773 (NCM) (SIL), 2024 WL 4836345 (E.D.N.Y. Nov. 20, 2024) ........... 12

*Tamara Brokerage, Inc. v. Andreoli*,
    24 A.D.3d 536 (2nd Dep't 2005) .............................................................................. 12

*Transcience Corp. v. Big Time Toys, LLC*,
    50 F. Supp. 3d 441 (S.D.N.Y. 2014)......................................................................... 21

**Statutes**

15 U.S.C. § 78u-6 ......................................................................................................... 7

N.Y. CPLR § 213............................................................................................................ 14

N.Y. Gen. Oblig. Law § 5-701......................................................................................... 11

## PRELIMINARY STATEMENT

In this lawsuit, Plaintiff Kevin Barnes ("Barnes") seeks a portion of a whistleblower award that the United States Securities and Exchange Commission ("SEC") issued to Defendant Carson Block for assistance he provided to the SEC in connection with its fraud investigation into a Chinese company. After careful review at the administrative level, the SEC issued a written decision concluding that Barnes had no entitlement to a bounty (he had not even contacted the SEC during its investigation), but that Mr. Block – who had offered the agency substantial assistance – did. Barnes appealed that decision to the Third Circuit and lost. Having been denied his own award by the SEC and the courts, Barnes has turned his ire on Mr. Block, seeking to wrest from him a portion of *his* whistleblower award, all based on a shifting constellation of legal theories.

In 2011, Defendant Muddy Waters, LLC's ("Muddy Waters") conducted an investigation into fraudulent representations to U.S. investors made by a Chinese company known as Focus Media (FMCN). Mr. Block, as the sole member and manager of Muddy Waters, engaged Barnes as a third-party consultant on a project basis to join an existing team investigating FMCN. Muddy Waters then published six reports on the findings of its investigation, and Mr. Block provided substantial assistance to the SEC, including by submitting to the SEC compelling evidence of FCMN's fraud. The SEC launched an investigation of FCMN, which led to an approximately $56 million settlement in favor of the Government.

Following the settlement, Mr. Block applied to the SEC for a whistleblower award based on the assistance he had provided to the SEC. Barnes submitted his own, competing application, even though he had had no contacts with the SEC at all; his claim to an award was based solely on the project work Mr. Block had engaged him to do. The SEC recognized that Mr. Block's assistance, including Mr. Block's direct communications with the SEC, had contributed

1

significantly to its investigation, and it determined that Mr. Block was entitled to a $14 million whistleblower award. At the same time, the SEC determined that Barnes was entitled to nothing, and the Third Circuit affirmed.

In his original complaint, Barnes pled claims against Mr. Block and Muddy Waters LLC for breach of fiduciary duty and unjust enrichment. He asserted that he and Mr. Block formed an oral partnership at a meeting on September 14, 2011, and that Mr. Block breached his fiduciary duty to Barnes under that alleged partnership by failing to share the whistleblower award with Barnes. Barnes did not assert a breach of contract claim in his original complaint or allege that the parties had formed an enforceable contract.

In his Amended Complaint, Barnes now adds a new breach of contract claim – but the claim is based on a contract that, by his own pleading, does not actually exist. This bizarre circumstance arises from the fact that the entire basis for this new claim – as Barnes himself asserts in the Amended Complaint – is *Mr. Block's* deposition testimony, in which he swore he believes he had entered into a consultant/independent contractor agreement with Barnes approximately 15 years earlier to procure Barnes' services for Muddy Waters' investigation of FMCN. What the Amended Complaint fails to disclose is that Mr. Block testified that the contract he recalls signing with Barnes was in writing – a fact that Barnes affirmatively denies in his pleading – and that it did not contain the key term that the Amended Complaint seeks to enforce here: a "split" of proceeds from the "monetization of the research" (which Barnes fails to define). Barnes' new contract claim crosses the line from pleading in the alternative to pleading in incoherence.

Barnes' contract claim fails at every step. Even ignoring the facial inconsistency of Plaintiff's latest pleading, the verbal contract that Barnes attempts to allege is barred by the

2

Statute of Frauds because it purports to impose on Defendants an indefinite obligation to pay Barnes a percentage of proceeds, years later, based on the actions of third parties that were wholly outside the parties' control. It is black-letter New York law that oral contracts of this indefinite sort are subject to the Statute of Fraud and thus are unenforceable. *See* Part I, infra. Separately, and moreover, the Amended Complaint – understood in its full context, which includes the deposition testimony that Plaintiff expressly incorporates by reference into the Amended Complaint – fails to adequately plead the basic requirements for a breach of contract claim: the existence of a contract, the essential terms, Barnes' specific obligations and performance thereof, and the terms Defendants purportedly breached. The inadequacy of the contract claim is unsurprising; Plaintiff can hardly provide the requisite details about a contract that, as described in Mr. Block's testimony, does not include the provision Barnes now seeks to enforce and that Barnes himself does not believe exists.

The incoherence of the Amended Complaint is particularly inexcusable because fact discovery is nearly complete. Plaintiff will not be able to address the Amended Complaint's woeful inadequacies later. As fact discovery is concluding, Plaintiff asks the Court to countenance a claim so deficient that it would not have passed muster on day one, based on nothing more than the testimony of an adverse party that directly refutes, rather than supports, his claim. The breach of contract claim should be dismissed.

## ALLEGATIONS IN THE AMENDED COMPLAINT[1]

### Carson Block & Muddy Waters

Carson Block is the owner and sole member of Muddy Waters. ¶ 26.[2] Muddy Waters is an independent organization that provides information to the investing public regarding publicly traded companies, especially companies that have been engaged in wrongdoing or have serious inaccuracies in their financial statements. ¶ 27.

### Muddy Waters Investigates Focus Media

In 2011, Mr. Block began to suspect that a Chinese company, Focus Media, and its chief executive, Jason Jiang, had mispresented its business to United States investors through its securities filings. ¶ 44. Mr. Block decided to launch an investigation into Focus Media and publish the findings of that investigation through Muddy Waters. ¶¶ 44, 48.

On September 14, 2011, Mr. Block and Barnes met in New York to discuss the Focus Media investigation. ¶ 43. The meeting lasted "over an hour." *Id.* During the meeting, Barnes agreed to contribute to the Focus Media investigation by conducting an "in-depth analysis of Focus Media and Jiang." ¶ 47. Like the original complaint, the Amended Complaint refers to this agreement as an "oral partnership agreement." ¶ 45. According to the Amended Complaint, the only terms of this alleged "oral partnership agreement" were: (1) "Barnes would provide research and financial analysis concerning the Focus Media opportunity and Mr. Block, through Muddy Waters, would publicize the findings," (2) Barnes would be permitted to trade (short) the

---

[1] Defendants vigorously dispute the allegations in the Amended Complaint. They are recited here only because the Court must accept a complaint's factual allegations as true on a motion to dismiss. *See Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114, 118 (2d Cir. 2017). The Court need not, however, accept "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

[2] All citations to "¶ __" refer to paragraphs in the Amended Complaint.

stock at his own risk, and (3) "if the report generated revenue, the parties would share in those proceeds." ¶ 46.

The Amended Complaint does not allege any agreement between Mr. Block and Barnes concerning what constituted "revenue" generated by the report or *how* any proceeds would be "share[d]." The Amended Complaint is also silent as to who conceived of, directed, and funded the Focus Media investigation (Mr. Block and Muddy Waters did).

The Focus Media investigation was conducted primarily in Bangkok, Thailand. ¶¶ 54-55. Muddy Waters' on-site team included Mr. Block, three native Chinese speakers, an American full-time employee of Muddy Waters, and Barnes. *Id.* Other team members traveled to Thailand periodically to work on the project. The team spent one month in Bangkok, from October 10, 2011 through November 9, 2011. ¶¶ 55, 60. Mr. Block, three Muddy Waters investigative team members, and Barnes then flew back to the U.S. to finalize the report. ¶ 60.

**Muddy Waters Publishes the FMCN Report**

On November 21, 2011, Muddy Waters published a report entitled "FMCN: The Olympus of China" (the "FMCN Report"). ¶ 61. The report was published from Mr. Block's home in California. ¶ 62. Within hours of the release of the FMCN Report, shares of Focus Media plunged as much as 66% in intraday trading. ¶ 69.

Mr. Block and Muddy Waters continued investigating Focus Media. Following the publication of the initial FMCN Report, Muddy Waters published five additional reports on Focus Media between 2011 and 2013. Barnes does not allege to have been involved in any of those subsequent reports. Instead, in or around September 2012, Barnes took a full-time position with a firm that competed with Muddy Waters. ¶ 77. Barnes also does not allege (nor can he based on the discovery record) that he asked Mr. Block how much Muddy Waters received (from

third parties prior to publishing the report, for example) for research on FMCN or that he demanded a share of any such monetization at the time.

**The SEC Investigates and Punishes Focus Media Based on Muddy Waters' Reports**

In December 2011, the SEC opened a "Matter Under Inquiry" concerning Focus Media and Jiang. ¶ 71. Mr. Block discussed the FMCN Report findings with the SEC; and, in coordination with the Muddy Waters team in China (which did *not* include Barnes), provided the SEC with critical evidence, including the source materials on which the FMCN report was based. ¶¶ 72-73.

On September 30, 2015, the SEC released a Notice of Covered Action announcing that it had successfully entered into a settlement with Focus Media and Jiang in the amount of approximately $55.6 million. ¶ 79. Simultaneous with the posting of the Notice of Covered Action, the SEC announced it would accept applications from those people who believed they provided material information to the SEC and could support a whistleblower award. ¶ 81.

**Mr. Block and Barnes Submit Competing Whistleblower Award Applications**

Following the SEC's announcement, Barnes reached out to Mr. Block to inquire about submitting a whistleblower award application on Muddy Waters and/or Mr. Block's behalf to the SEC based on the FMCN Report. ¶ 86. Mr. Block responded, "I'll look at whether it's potentially eligible." ¶ 87. Barnes sent a follow-up email to Mr. Block reiterating his offer of assistance with a whistleblower application. ¶ 88. On January 19, 2016, Mr. Block responded to Barnes, saying that Mr. Block already had counsel handle the whistleblower award application. ¶ 91. After Mr. Block declined Barnes' offer of assistance, Barnes filed competing whistleblower application without informing Mr. Block. ¶¶ 91–92.

In all of Barnes' communications with Mr. Block concerning the whistleblower award application, Barnes does not allege (nor can he based on the discovery record) that he (i) demanded a share of any potential whistleblower award Mr. Block may receive, (ii) raised the purported "oral partnership agreement" or contract, (iii) inquired about Mr. Block's choice of counsel to represent him in the whistleblower application process, or the fee arrangement with counsel, or (iv) sought to enforce the purported "oral partnership agreement" or contract. Instead, on January 19, 2016, Barnes filed his own whistleblower award application without informing Mr. Block. ¶¶ 91–92. After January 19, 2016, Mr. Block and Barnes did not have any further communications concerning Focus Media, the FMCN Report, or any potential SEC whistleblower award. ¶ 94.

**The SEC Determines Mr. Block, not Barnes, Qualifies for a Whistleblower Award, and Barnes Appeals the Determination**

On March 11, 2022, the SEC issued a Final Order determining that Mr. Block qualified for a whistleblower award and Barnes did not (the "Final Order"). ¶¶ 103-04. On April 8, 2022, Barnes appealed the Final Order to the United States Court of Appeals for the Third Circuit, asking that court to reverse the Final Order. ¶ 118; *see* 15 U.S.C. § 78u-6(f) (describing right to appeal whistleblower awards); *Doe v. Sec. & Exch. Comm'n*, No. 22-1652 (3d Cir.). In that appeal, Barnes did not claim he was Mr. Block's partner or that he and Mr. Block purportedly agreed, by contract or otherwise, to share any award. Rather, Barnes claimed only that he, not Mr. Block, provided important information to the SEC regarding Focus Media.

**The Amended Complaint Adds a Breach of Contract Claim Based Solely on Mr. Block's Testimony That Forecloses His Claim**

The entire basis for Plaintiff's new contract claim is Mr. Block's deposition testimony. Mr. Block testified that he believed he had entered into a written consultant/independent contractor agreement with Mr. Barnes. ¶ 123 ("Mr. Block testified that the nature of Mr. Barnes'

relationship with Defendants was that of an independent contractor."). But, even as he cites and incorporates Mr. Block's deposition testimony in his Amended Complaint, Plaintiff repudiates, contradicts or ignores, rather than relies on, key aspects of the testimony. ¶ 124 ("Mr. Barnes disagrees that there was ever a written agreement between Mr. Barnes and Defendants concerning the nature of their relationship or Mr. Barnes' rights to compensation thereunder."). The cited pages of the deposition Barnes incorporates into the Amended Complaint make clear that, under a written consulting agreement, Barnes was a contractor/consultant who would assist with research in exchange for reimbursement of his travel expenses and the opportunity to trade on Muddy Waters' research prior to the publication of its report (a valuable opportunity that Barnes exploited).[3] *See* Ex. A (excerpts of deposition of Carson Block) at 10:21–22, 11:13–17. The only *other* compensation for which Barnes was eligible was a discretionary bonus. *Id*. at 147:12–21. Mr. Block testified that the consulting agreement did *not* include a term that Mr. Block "would share in the proceeds with Mr. Barnes" if he "were to monetize the research" to a third party. *Id*. at 148:11–15. There were no "economic terms" entitling Mr. Barnes to a fixed fee or percentage of any proceeds. *Id.* at 122:12–123:19. The pages of Mr. Block's testimony cited in the Amended Complaint make clear that Mr. Block already had partners, and that Mr. Block would have been in no position to pledge away 50% of project economics, particularly to a consultant on a team of numerous researchers with pre-existing relationships with Mr. Block. *Id*. at 152:3–8.

---

[3] *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (on a motion to dismiss, the court may consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint").

8

Notably, the Amended Complaint also does not allege any contractual definition of the term "monetization of the research," or *how* any "portion of such proceeds" would be shared. ¶¶ 145, 148.

**PROCEDURAL HISTORY**

On July 25, 2022, Plaintiff filed a Summons with Notice in the Supreme Court of the State of New York, New York County. *See* ECF No. 1-1. On August 24, 2022, Defendants filed a Notice of Removal in this Court. ECF No. 1. On September 28, 2022, Barnes filed his original complaint. ECF No. 13.

On March 23, 2023, the Third Circuit denied Barnes' petition of review of the SEC's whistleblower award determination, explaining that the SEC did not err in denying his claim because Barnes did not "directly submit information to the SEC." *Doe (Claimant #2) v. Sec. & Exch. Comm'n*, No. 22-1652, 2023 WL 3562977, at *3 (3d Cir. Mar. 23, 2023). The Third Circuit found that Mr. Block, on the other hand, was entitled to an award because he provided information directly to the SEC. *Id.* at *3.

On June 23, 2025, the Court dismissed Plaintiff's constructive trust claim but allowed the breach of fiduciary duty (based on oral partnership) and unjust enrichment claims to proceed. ECF No. 41.

On February 12, 2026, the deadline to file an amended pleading expired. ECF No. 50 ¶ 6.

On May 29, 2026, fact discovery closed, with a limited exception for third party discovery. ECF No. 103.

On June 9, 2026, Plaintiff filed a letter requesting a pre-motion conference with Magistrate Judge Hon. Henry J. Ricardo regarding Plaintiff's request to file a motion for leave to amend. ECF No. 113. Defendants filed a letter opposing Plaintiff's pre-motion letter and

requested the opportunity to brief Plaintiff's contemplated motion for leave to amend. ECF No. 115.

On June 23, 2026, Magistrate Judge Ricardo held a pre-motion conference and granted Plaintiff leave to amend without briefing on the contemplated motion. ECF No. 117.

On July 8, 2026, Magistrate Judge Ricardo issued a scheduling order providing that Defendants would respond to the Amended Complaint by August 7, 2026, and that a supplemental discovery period would run until September 15, 2026. ECF No. 122.

On July 9, 2026, Plaintiff filed an Amended Complaint, adding a breach a contract claim. ECF No. 123.

For the reasons set forth below, the breach of contract claim should be dismissed.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## ARGUMENT

Plaintiff's contract claim fails because it (1) is barred by the Statute of Frauds, and (2) does not adequately plead the elements of a breach of contract claim.

## I.      THE STATUTE OF FRAUDS BARS PLAINTIFF'S CONTRACT CLAIM

Plaintiff's oral contract claim is barred by the Statute of Frauds because—even if it were properly pled and not incoherent on its face—it purports to impose on Defendants an indefinite obligation: Mr. Block must allegedly pay Barnes some portion of any "monetization of the research that Mr. Barnes conducted" *indefinitely into the future. See* N.Y. Gen. Oblig. Law § 5-

10

701(a)(1). The lack of any reasonable end-date to the alleged contract—and the fact that, as described, its obligations would be triggered indefinitely into the future—is fatal to the claim under New York law. And Plaintiff cannot escape the Statute of Frauds by asserting that his contract claim arises under a written agreement because he has already conceded that his "claim does *not* arise under the written contract." ECF No. 118 at 9:12 (emphasis added).

Plaintiff's contract claim is barred by the Statute of Frauds. "[I]t is well-established under New York law that a contract of indefinite duration . . . must be in writing." *Johnson v. Giles*, No. 1:23-CV-2444 (MKV), 2024 WL 4240446, at *6 (S.D.N.Y. Sept. 19, 2024) (citation and quotation marks omitted). That is because "[a] contract of indefinite duration, lacking a provision for a party to terminate the contract other than by breaching it, cannot be performed within one year of its making." *Grasso v. Donnelly-Schoffstall*, No. 21-1021, 2022 WL 728839, at *2 (2d Cir. Mar. 11, 2022). Thus, a claim that fails to "plead that there was a written contract, that the parties' agreement had any durational element, or that there was any termination provision" must be dismissed. *Id*.

Reading the Amended Complaint charitably, the oral contract that Plaintiff now, belatedly, seeks to enforce runs indefinitely into the future, and its obligations on Mr. Block are triggered exclusively by third-party conduct, i.e., a third-party's payment of money for research on FCMN.  Indeed, here, Plaintiff suggests that the breach occurred when the SEC disbursed the whistleblower award in 2022 – some eleven years after the September 14, 2011 meeting. ¶ 103–04, 148; ECF No. 41 at 5. Such an indefinite contract term – running endlessly into an uncertain future and not alleged to be terminable by either party – is forbidden by the Statute of Frauds. *See Rosenthal v. Kingsley*, 674 F. Supp. 1113, 1123 (S.D.N.Y. 1987) (finding a contract barred by the Statute of Frauds because a contract term for 25% of gross income at any point "whenever

11

said income is received" cannot be completed within one year); *Guterman v. RGA Accessories, Inc.*, 196 A.D.2d 785, 785 (1st Dep't 1993) ("The indefinite promise to pay commissions on all future sales is clearly within the Statute and voidable for want of a writing satisfying the Statute."). A promise to pay a portion of *all* future proceeds, even years into the future, cannot be fully performed within one year.

The purported promise to pay Plaintiff a portion of any future "monetization" of his research is the archetype of an indefinite term for a second reason as well: Defendants' obligation to pay hinged on the actions of third parties, such as the SEC. Under New York law, an "oral contract is indefinite [where] its performance depends on the actions of third-parties." *Giles*, 2024 WL 4240446, at *7. "[W]hen a contract ties a party's obligation to pay commission to an occurrence that is outside that party's control and may not occur for an indefinite time in the future, it must comply with the Statute of Frauds." *Tal v. Computech Int'l, Inc.*, No. 21-CV-05773 (NCM) (SIL), 2024 WL 4836345, at *4 (E.D.N.Y. Nov. 20, 2024) (cleaned up); *see also Tamara Brokerage, Inc. v. Andreoli*, 24 A.D.3d 536, 537 (2nd Dep't 2005) (oral agreement barred by Statute of Frauds where plaintiff claimed that defendant's promise to pay a share of commissions was "indefinite in nature" and the triggering event for such payment was the action of a third party). Under Plaintiff's view, the triggering event for Defendants' indefinite obligation to pay him was their receipt of monies from third parties at any point in the future. Thus, the very term upon which Plaintiff's claim rests—indeed, the only contract term he attempts to plead—is barred by the Statute of Frauds.

Barnes' suggestion that "monetization of the research that Mr. Barnes conducted," ¶ 145, included an SEC whistleblower award renders the purported contract unenforceable for a third reason. To begin, it is utterly implausible that an SEC whistleblower award could be obtained

12

within one year of the project's completion in November 2011. The required regulatory steps for

an SEC whistleblower award – which were in place in September 2011, the alleged time of

contract formation – are set forth in the whistleblower regulations, of which the Court can take

judicial notice and which are incorporated by reference in the Amended Complaint, ¶ 83[4].  They

include:

1. SEC receives and reviews tip(s) and report(s) about potential violations;
2. SEC conducts informal inquiry/preliminary review;
3. SEC conducts a comprehensive formal investigation using subpoena power;
4. SEC commences civil or administrative proceedings or negotiates a settlement;
5. Final judgment is entered in SEC enforcement action;
6. The SEC publishes a Notice of Covered Action;
7. Whistleblowers have 90 days to submit a WB-APP;
8. SEC reviews claims and provides claimants with a preliminary determination;
9. Claimants have opportunity to object to preliminary determination;
10. SEC reviews objections and issues a proposed final determination;
11. Proposed final determination becomes final and SEC issues final order to claimants;
12. The final determination can be appealed to the Circuit Court of Appeals; and
13. Circuit Court of Appeals affirms or reverses the SEC's final order.

There simply is no plausible scenario under which all of these steps could be completed

within one year. Even after the SEC receives information concerning a company's alleged fraud,

and even assuming the company immediately admits wrongdoing in its SEC filings and is swiftly

de-listed, it takes years—not months—for the SEC to complete a formal investigation and either

commence proceedings or settle the matter.[5] Moreover, the time from publication of a short

---

[4] Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34, 300 (June 13, 2011) https://www.sec.gov/files/rules/final/2011/34-64545.pdf (p. 174).

[5] U.S. Sec. and Exch. Comm'n, *SEC Charges China-Based Executives in Scheme to Overstate Revenues and Divert Money for Personal Use*, Press Release No. 2013-87 (May 15, 2013) https://www.sec.gov/newsroom/press-releases/2013-2013-87htm.

report to completion of the SEC's formal investigation only accounts for steps 1–4 above, with the remaining steps necessarily adding year(s) more until payment of any whistleblower award.

Plaintiff is trapped between the statute of limitations and the Statute of Frauds. Plaintiff maintains that breach did not occur until he was "left out of any whistleblower award." ECF No. 41 at 19. Plaintiff must take this position to avoid the six-year statute of limitations for a breach of contract claim, N.Y. CPLR § 213(2). That means Plaintiff believes the promise to pay him any time his research was ever "monetize[ed]" was so eternal that it was still in effect over a decade-plus after it was made. ¶ 145. Under the Statute of Frauds, an oral agreement based on such an indefinite promise is unenforceable and void.

Moreover, even if, implausibly and irrationally, Mr. Block and Barnes had misinterpreted the whistleblower regulations and believed that a project conceived in the fall of 2011 could yield an SEC whistleblower award by the fall of 2012, such a subjective misguided belief would not rescue his claim. "A contract term for a percentage of profits for an indefinite period falls within the Statute of Frauds." *Balder v. Sarandon*, No. 22-CV-06401 (JLR)(SN), 2023 WL 9232957, at *4 (S.D.N.Y. Dec. 18, 2023). In *Balder*, where the parties intended "to finish the project within one year," the oral agreement was still unenforceable because the agreement as alleged included "indefinite profit-sharing terms[,] render[ing] it barred by the Statute of Frauds." *Id*. (cleaned up). The parties' subjective beliefs about the contract's duration do not control. Because Plaintiff fails to plead that Defendants' obligation to pay him proceeds from third parties had any durational limit or termination provision, his contract claim fails. *Grasso*, 2022 WL 728839, at *2.

14

## II.    PLAINTIFF HAS NOT ADEQUATELY PLED A BREACH OF CONTRACT CLAIM

Plaintiff also does not sufficiently plead the necessary elements of a breach of contract claim. Failure to adequately plead any of the following would require dismissal: the existence of a contract, the essential terms, Plaintiff's specific obligations and performance thereof, and Defendants' breach of specific contractual terms. The contract claim in the Amended Complaint fails on each score.

### A.    Plaintiff Does Not Adequately Plead the Existence of a Contract

Plaintiff fails to allege the basic elements of a breach of contract claim. To state a claim for breach of contract, Plaintiff must plead "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). The Amended Complaint fails the first element.

The basis for Plaintiff's new contract claim is deposition testimony from Carson Block in which he states that he believed he had a written consultant/independent contractor agreement with Mr. Barnes. ¶ 123 ("Mr. Block testified that the nature of Mr. Barnes' relationship with Defendants was that of an independent contractor."). But Plaintiff repudiates (rather than relies on) that testimony in his Amended Complaint. ¶ 124 ("Mr. Barnes disagrees that there was ever a written agreement between Mr. Barnes and Defendants concerning the nature of their relationship or Mr. Barnes' rights to compensation thereunder."). Defendants have consistently maintained in this litigation that Barnes was a consultant/contractor on the FMCN project, as Mr. Block testified at his deposition.

The Amended Complaint incorporates by reference the testimony of Mr. Block, as set forth in the deposition transcript. ¶¶ 120–125; *see DiFolco*, 622 F.3d at 111 (on a motion to dismiss, the court may consider "documents incorporated by reference in the complaint").

15

"[W]here a document relied on in the complaint contradicts allegations in the complaint, the document controls, and the court need not accept the allegations in the complaint as true." *Noriega v. Abbott Lab'ys*, 714 F. Supp. 3d 453, 457 (S.D.N.Y. 2024) (cleaned up).

That is exactly the situation here. Mr. Block's testimony – which the Amended Complaint incorporates – directly *contradicts* Barnes' theory that the parties agreed to share the proceeds from "monetization of the research." ¶ 145. The cited pages of Mr. Block's deposition make clear that, under the written consulting agreement about which Mr. Block testified, Barnes was a contractor/consultant who would assist with research in exchange for reimbursement of his travel expenses and the opportunity to trade on Muddy Waters' research. *See* Ex. A at 10:21–22, 11:13–17. The only other compensation for which Barnes was eligible was a discretionary bonus. *Id*. at 147:12–21. Mr. Block was clear that the consulting agreement did *not* include a term that Mr. Block "would share in the proceeds with Mr. Barnes" if he "were to monetize the research" to a third party. *Id*. at 148:11–15. There were *no* "economic terms" entitling Mr. Barnes to (a fixed fee or percentage of) *any* proceeds. *Id.* at 122:12–123:19.

Far from supporting Plaintiff's breach of contract claim, the agreement that Mr. Block testified to *contradicts* the entire thrust of Plaintiff's newfound contract claim. While Plaintiff seeks to rely on part of Mr. Block's testimony – the part that alleges the existence of an agreement – he intentionally omits Mr. Block's testimony about the *terms* of that agreement. Those terms do not include a split of proceeds at all; to the contrary, they limit Barnes' compensation for the project work to the right to trade on FCMN alongside Muddy Waters, ahead of the public release of the report, and travel expenses. *See* Ex. A at 147:12–21; 148:11–15; 122:12–123:19. By incorporating Mr. Block's specific testimony about the terms of the

16

written consulting agreement, Plaintiff has defeated his own intentionally ambiguous claim. The actual terms of that agreement clearly foreclose Barnes' claim.

Recognizing the inherent contradictions between his new theory of liability and the testimony upon which it is based, Plaintiff attempts to "plead around" the problem. He alleges that "*[t]o the extent the agreement between Mr. Barnes and Defendants was contractual*, Mr. Barnes performed under such agreement," ¶ 147 (emphasis added) – without ever affirmatively asserting that such an agreement actually existed. ¶ 146. "To the extent" is not the pleading of a fact; it is a dodge. And Plaintiff cannot have it both ways: either (1) there *was* an agreement along the lines that Mr. Block described and that the Amended Complaint incorporates – in which case the claim fails because the record contradicts the pleading, because that agreement did not include a split of "monetization of the research," or (2) there was no agreement at all, in which case the new cause of action fails for that reason. Notably – and we can say this now because the Amended Complaint was filed as fact discovery is closing – in all of Barnes' communications with Mr. Block concerning the whistleblower award application, there is not a single instance in which Barnes (i) demanded a share of any potential whistleblower award Mr. Block may receive, (ii) raised the purported "oral partnership agreement" or contract, (iii) inquired about Mr. Block's choice of counsel to represent him in the whistleblower application process, or the fee arrangement with counsel, or (iv) sought to enforce the purported "oral partnership agreement" or contract.

Plaintiff has already conceded he cannot rely on the written consulting/independent contractor agreement about which Mr. Block testified to establish his contract claim, admitting that his "claim does not arise under the written contract." ECF No. 118 at 9:12. That admission leaves Plaintiff with no contract for his contract claim. Plaintiff does not himself plead the

17

existence of a contract. And Mr. Block's testimony (that Plaintiff rejects) does not fill the gap because (1) Plaintiff admits that the consulting/independent contractor agreement provides no basis for his claim, and (2) the terms of that agreement, incorporated by reference, refuse any entitlement to the award Barnes seeks to wrest from Mr. Block.

### B.    Plaintiff Does Not Plead with Definiteness the Essential Terms of the Contract

Even if the Amended Complaint coherently pled the existence of an oral contract (it does not), it would still fail because "[a] breach of contract claim will be dismissed [] as being too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated." *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019). "[T]he burden of establishing the terms of the verbal contract [] falls to the proponent." *Charles Hyman, Inc. v. Olsen Indus., Inc.*, 227 A.D.2d 270, 275 (1st Dep't 1996). "[F]or all but the simplest of transactions, the burden of establishing the terms of the verbal contract—which falls to the proponent—presents a formidable obstacle to its enforcement." *Caro Cap., LLC v. Koch*, No. 20-CV-6153 (LJL), 2021 WL 1595843, at \*6 (S.D.N.Y. Apr. 23, 2021).

Plaintiff fails to carry that formidable burden. Indeed, the sole sentence in the Amended Complaint that attempts to plead any term of the purported contract is that "each party would trade for his own account, but would split proceeds from any monetization of the research that Mr. Barnes conducted in connection with Defendants." ¶ 145. Plaintiff does not allege that there was any meeting of the minds as to what the term "monetization of the research" meant or that there was any agreement as to whether an SEC whistleblower award would constitute "monetization of the research." Plaintiff cannot conclusorily plead one term of a contract and call

18

it a day; he must "allege the essential terms in nonconclusory language." *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 645 (S.D.N.Y. 2011); *see also Generation Next Fashions Ltd. v. JP Morgan Chase Bank, N.A.*, 698 F. Supp. 3d 663, 673 (S.D.N.Y. 2023) ("A breach of contract claim will be dismissed where a plaintiff fails to allege the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated.") (cleaned up).

In this case, Plaintiff *omits* almost all the essential terms of the contract he now seeks to "enforce." Plaintiff does not plead with definiteness: the species of contract (employment, consultant, partnership, etc.); the parties to the agreement (was the contract between himself and Carson Block, with Muddy Waters as a guarantor; or between his entity and Muddy Waters; or did it include other parties?); his precise obligations under the contract; each of Mr. Block's and Muddy Waters' obligations under the contract; whether (and how) the contract was terminable; the timing and amount of any compensation owed; and the meaning of "monetization of the research," a bespoke term made up by Barnes with no accepted meaning anywhere in business law. Omitting any one of these terms would be fatal to Plaintiff's claim. *See Hecht v. Helmsley-Spear, Inc.*, 65 A.D.3d 951, 951 (1st Dep't 2009). Omitting all of them leaves the Court unable to determine whether there was a meeting of the minds on all the essential terms of the contract. *See Caro Cap.*, 2021 WL 1595843, at *7 (finding the sparse terms alleged inadequate to "demonstrate that the parties reached a meeting of the minds" regarding the essential terms).

Plaintiff's strategy to plead only the term he alleges was breached cannot be countenanced. *See id.* ("Although the [contract proponents] allege that one of the terms of the alleged oral contract was definite—the term upon which they sue—New York law requires that an agreement be reasonably certain in its material terms, not just some of its material terms.")

(cleaned up). That one-and-done approach to pleading does not work because "for a contract to be valid, the agreement between the parties must be definite and explicit so their intention may be ascertained to a reasonable degree of certainty." *Id*. at *6 (quotation omitted).

Plaintiff overpromised and underdelivered. Plaintiff advised the Court when proposing to amend his complaint that "[Defendants] say [the contract] has certain terms" and "[Plaintiff says] it has different terms." ECF No. 118 at 9:17–18. But the Amended Complaint does not include the "different terms" that Plaintiff said he believes existed. *Id*. Plaintiff rejects the existence of a consulting/independent contractor agreement but fails to elucidate the essential terms of a contract that he *does* believe existed.

The absence of the essential terms renders the alleged contract too vague and indefinite to be enforceable. For example, Plaintiff suggests that there were at least three parties to the contract—Mr. Barnes, Mr. Block and Muddy Waters, ¶ 144—and that each contract party would "split proceeds from any monetization of the research that Mr. Barnes conducted in connection with Defendants." ¶ 145. But Plaintiff does not allege that the parties agreed a whistleblower award would constitute "monetization of the research," a dispositive omission given the Third Circuit's finding that the whistleblower award was based on Mr. Block's direct communications with the SEC and *not* on the Muddy Waters report that Barnes worked on. *See Doe (Claimant #2) v. Sec. & Exch. Comm'n*, No. 22-1652, 2023 WL 3562977, at *2 (3d Cir. Mar. 23, 2023). Nor does Barnes plead what his "split" was to be under a contract with at least three parties. Barnes complains he did not receive "his portion" of Mr. Block SEC Whistleblower award, ¶ 148, but fails to plead the contract's terms that would determine the amount and timing of any payment due. *See Hecht*, 65 A.D.3d at 951 (dismissing breach of oral contract claim that did not specify the contract's "actual terms as to the amount, form, and timing of payment of any

20

compensation, and including no methodology or custom providing for the determination of the same").

When a complaint does not set forth with definiteness the essential terms, the Court simply cannot assess whether there was a meeting of the minds as to those terms, whether plaintiff performed under those terms, and whether defendant breached them—much less determine the amount due plaintiff pursuant thereto. Plaintiff's intentionally vague pleading—about a contract he does not believe exists—suffers from all these flaws.

### C.     Plaintiff Does Not Adequately Plead That He Performed Under the Contract

Plaintiff's failure to plead in nonconclusory fashion "the performance of [his] own contractual obligations is fatal to a breach of contract claim even if the other requisite elements are properly pleaded." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 451 (S.D.N.Y. 2014). Plaintiff pleads merely that "[t]o the extent the agreement between Mr. Barnes and Defendants was contractual, Mr. Barnes performed under such agreement." ¶ 147. Such a conclusory statement that "Plaintiff has performed all of its obligations under the Agreement" fails to "sufficiently allege [] adequate performance under the Agreement, a required element under New York law." *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 808 (S.D.N.Y. 2012). These threadbare legal conclusions do not pass muster under *Twombly* and *Iqbal*. *See Boustead Sec., LLC v. Leaping Grp. Co.*, No. 20-CV-3749 (VEC), 2021 WL 3774116, at *3 (S.D.N.Y. Aug. 25, 2021) (allegation that plaintiff "performed all of its obligations" was "conclusory and insufficient to plead performance").

Plaintiff's failure to plead his contractual obligations dooms his ability to plead that he performed them. And without setting forth his own obligations, and how he satisfied them, Plaintiff cannot bring a claim to enforce the obligations of others. *See Caro Cap.*, 2021 WL 1595843, at *7 (dismissing breach of oral contract claim where proponents of the contract did

21

not demonstrate that they "performed their obligations so as to be able to hold the [alleged counterparty] in breach"). Even for the one contractual term that Plaintiff purports to plead, he does not attempt to describe what obligations he had to satisfy to trigger Defendants' purported obligation to pay him "his portion" of any "monetization of the research that Mr. Barnes conducted[.]" ¶¶ 145, 148. Notably, Barnes does not allege that anything else – including expenses – was to be divided between the (undefined) parties, leaving the Court in the dark as to his end of the purported bargain. Plaintiff fails to adequately plead that he performed under the terms of a contract.

    **D.    Plaintiff Does Not Adequately Plead That Defendants Breached the Contract**

    Plaintiff also fails to adequately allege Defendants breached any purported contract. Plaintiff alleges Defendants promised to "split proceeds from any monetization of the research that Mr. Barnes conducted in connection with Defendants." ¶ 145. Plaintiff suggests that breach occurred when "Mr. Block received a $14 million whistleblower award but failed to remit Mr. Barnes his portion of such proceeds." ¶ 148. But Plaintiff never alleges that there was a meeting of the minds that a whistleblower award would constitute "monetization of the research that Mr. Barnes conducted[.]" ¶ 145.

    Plaintiff does not allege this because he cannot allege it. Plaintiff's prior theory that the whistleblower award was a monetization of his research has already been rejected. *See Doe (Claimant #2) v. Sec. & Exch. Comm'n*, No. 22-1652, 2023 WL 3562977, at *2 (3d Cir. Mar. 23, 2023). Both the SEC and the Third Circuit rejected Plaintiff's theory that the whistleblower award was due to the report (and his contributions thereto), explaining that Mr. Block was entitled to an award because he provided information directly to the SEC. *Id.* at *3.

    Even if Plaintiff did allege that the whistleblower award was a monetization of his research (he does not and cannot), that allegation would be incoherent. After the FMCN Report

<div align="center">22</div>

was published, there was no research left to sell. The SEC stated that it issued Mr. Block a whistleblower award years later based on his communications with the SEC, not because of the FMCN Report itself, which the SEC discovered independently. *Id*. The whistleblower award was not "monetization of the research," and Plaintiff fails to allege otherwise.

In sum, Plaintiff does not and cannot establish that the whistleblower award was a monetization of his research sufficient to trigger Defendants' alleged, indefinite obligation to pay him a portion thereof. In lieu of such a showing, the Court is left with an intentionally vague pleading that does not pass muster. *See Combustion Prods. Mgmt., Inc. v. AES Corp.*, 256 F. App'x 441, 442 (2d Cir. 2007) (dismissing contract claim where the triggering condition for the defendant's performance was vague).

## CONCLUSION

For all the foregoing reasons, the Fourth Cause of Action in the Amended Complaint should be dismissed.

Dated:  August 7, 2026
       New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

/s/
Andrew G. Celli, Jr.
Samuel Shapiro
Adam Nasser

One Rockefeller Plaza, 8th Floor
New York, NY 10020
(212) 763-5000

*Attorneys for Defendants*

23

## CERTIFICATION

I HEREBY CERTIFY that, pursuant to this Court's Individual Rules and Practices in Civil Cases, § 2(h), the instant Memorandum of Law complies with Local Civil Rule 7.1(c). This Memorandum contains 6,901 words, exclusive of the case caption, table of contents, table of authorities, signature blocks, and required certificates.

Dated:　August 7, 2026
　　　　　New York, New York

<div style="margin-left:50%">

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP


_____/s/_____
Andrew G. Celli, Jr.
Samuel Shapiro
Adam Nasser

One Rockefeller Plaza, 8th Floor
New York, NY 10020
(212) 763-5000

*Attorneys for Defendants*

</div>

24